UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------)(

HEATHER M. PALMORE,

                                                        1:23-cv-01616-ER

                                *Plaintiff*,

                    - against -

NAPOLI SHKOLNIK PLLC, PAUL NAPOLI, MARIE NAPOLI
AND HUNTER SHKOLNIK,

                                *Defendants.*

--------------------------------------------------------------------------)(


## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS


HOLLY G. ROGERS
*Attorney for Defendants*
Melick & Porter LLP
11 Broadway, Suite 615
New York, NY 10022
(212) 541-7236
hrogers@melicklaw.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ..............................................................................................1

STANDARD OF REVIEW .....................................................................................................2

ARGUMENT ...........................................................................................................................5

POINT I:  THE COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS .........5

POINT II: VENUE IS IMPROPER IN THE SOUTHERN DISTRICT OF NEW YORK .....................................7

POINT III: THE PLAINTIFF CANNOT AVAIL HERSELF OF THE PROTECTIONS OF THE NYCHRL.............9

POINT IV: PLAINTIFF'S CAUSES OF ACTION ALLEGING RETALIATION AND INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT MUST BE DISMISSED ...................................12

    A.  Plaintiff Has Failed to Plead the Threshold and Dispositive Requirement of FMLA Eligibility in both her FMLA Interference and Retaliation Claims....................................................................13

    B.  Plaintiff Has Failed to Establish a Prima Facie Claim of FMLA Retaliation Because She Cannot Show That any Alleged Adverse Employment Action Occurred Under Circumstances Giving Rise to a Reasonable Inference of Retaliatory Intent ....................................................... 14

    C.  Plaintiff Has Failed to Establish her FMLA Interference and Retaliation Claims against the Individual Defendants ...................................................................................................16

POINT V: PLAINTIFF'S CLAIM FOR VIOLATION OF NEW YORK'S ANTI-SLAPP LAW IS IMPROPER AND SHOULD BE DISMISSED............ ...................................................................................17

    A.  Plaintiff has Failed to Establish a Violation of New York's Anti-SLAPP Law............ ..........17

    B.  The Court Should Abstain from Adjudication of and Dismiss Plaintiff's Anti-SLAPP Law Violation Claim Pursuant to the *Colorado River* Doctrine ............................................. 20

POINT VI:  PLAINTIFF'S CAUSES OF ACTION ALLEGING DISCRIMINATION, HARASSMENT AND RETALIATION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................................................................22

    A.  Plaintiff Fails to State a Claim of Race Discrimination Upon Which Relief can be Granted...........23

        1.  Plaintiff Fails to State a Claim of Disability Discrimination Upon Which Relief can be Granted ...................................................................................................30

    B.  Plaintiff Fails to State a Claim of Harassment/Hostile Work Environment Upon Which Relief can be Granted ...................................................................................................32

    C.  Plaintiff Fails to State a Claim of Retaliation Upon Which Relief can be Granted..........…..........35

    D.  Even if Plaintiff Could Avail Herself of the NYCHRL, Her Claims of Discrimination, Hostile Work

Environment, and Retaliation Nonetheless Fail………………………………………………………...38

POINT VII: ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED BECAUSE THE PLAINTIFF HAS FAILED TO PLEAD THE NECESSARY PERSONAL INVOLVEMENT AND INTENT.....40

    A.  Hunter Shkolnik ………………………………………………………………………………….41

    B.  Marie Napoli ……………………………………………………………………………………...43

    C.  Paul Napoli ……………………………………………………………………………………….44

CONCLUSION…………………………………………………………………………………………...56

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

Amaya v. Ballyshear LLC,
340 F.Supp.3d 215 (E.D.N.Y. 2018) ................................................................ 10

Aristocrat Plastic Surgery, P.C. v. Silva,
169 N.Y.S.3d 272 (N.Y. App. Div. 1st Dept. 2022) ........................................ 19

Arroyo-Horne v. City of New York,
831 Fed.Appx. 536 (2020) ................................................................................ 13

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .................................................................................... 4, 22

Back v. Hastings on Hudson Union Free Sch. Dist.,
365 F.3d 107 (2d Cir. 2004)............................................................................. 40

Ball v. Metallurgie Hoboken-Overpelt, SA.,
902 F.2d 194 (2d Cir. 1990) .............................................................................. 2

Balliet v. With Prejudice of the Other Kottamasu,
175 N.Y.S.3d 678 (N.Y. Civ. Ct. 2022) ..................................................... 18, 19

Baluch v. 300 West 22 Realty, LLC,
21-CV-9747 (JPO), 2023 WL 112547 (S.D.N.Y. Jan. 5, 2023) ........................38

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) .............................................................................. 4, 22, 23

Benham v. eCommission Sols., LLC,
118 A.D.3d 605 (1st Dept. 2014) ..................................................................... 10

Bennett v. Towers,
982 N.Y.S.2d 843 (N.Y. Sup. Ct. 2014) ........................................................... 18

Berman v. Informix Corp.,
30 F.Supp.2d 653 (S.D.N.Y. 1998) .................................................................... 8

Bermudez v. City of New York,
783 F.Supp.2d 560 (S.D.N.Y. 2011) ................................................................ 39

Bernheim v. New York City Department of Education,
19-CV-9723 (VEC) (JLC), 2021 WL 2619706 (S.D.N.Y. June 25, 2021) ............... 13

Bickerstaff v. Vassar College,
196 F.3d 435 (2d Cir. 1999) ..............................................................................23

Brinkmann v. Adrian Carriers, Inc.,
29 A.D.3d 615, 815 N.Y.S.2d 196 (2006) ........................................................................5

Chin v. Port Auth. of New York & New Jersey,
685 F.3d 135 (2d Cir. 2012) ..........................................................................29

Colorado River Water Conservation District v. United States,
424 U.S. 800 (1976) .............................................................................. 20, 21

Coutard v. Mun. Credit Union,
848 F.3d 102 (2d Cir. 2017) ............................................................................ 12

Daizell Mgmt. Co. v. Bardonia Plaza, LLC,
923 F.Supp.2d 590 (S.D.N.Y. 2013) .................................................................21

Davis-Molinia v. Port Auth. of N.Y. & N.J.,
08-CV-7586 (GBD), 2011 WL 4000997 (S.D.N.Y. Aug. 19, 2011) .........................................33

Dechberry v. N.Y.C. Fire Dep't,
124 F.Supp.3d 131 (E.D.N.Y. 2015) ..................................................................37

Deebs v. Alston Transp., Inc.,
346 Fed.Appx. 654 (2d Cir. 2009) .....................................................................15

DeLeon v. Teamsters Local 802,
LLC, 20-CV-24 (RRM) (PK), 2021 WL 1193191 (E.D.N.Y. Mar. 29, 2021) .............................13

Del Toro v. Novus Equities, LLC,
No. 20-CV-01002 (NSR), 2021 WL 5567618 (S.D.N.Y. Nov. 29, 2021) ..................................3

Detroit Coffee Co., LLC v. Soup for You, LLC,
No. 16-CV-09875 (JPO), 2018 WL 941747 (S.D.N.Y. Feb. 16, 2018) .....................................3

Dixon v. Int'l Federation of Accountants,
09-CIV-2839 (HB), 2010 WL 1424007 (S.D.N.Y. Apr. 9, 2010), aff'd, 416 Fed.Appx. 107 (2d Cir. 2011).......15

Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,
691 F.3d 134 (2d Cir. 2012) ........................................................................ 14

Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,
722 F.3d 81 (2d Cir. 2013) ..............................................................................2

EEOC v. Bloomberg L.P.,
967 F.Supp.2d 816 (S.D.N.Y. 2013) .................................................................. 10

Feingold v. New York,
366 F.3d 138 (2d Cir. 2004) .......................................................................... 41

Fernandez v. Windmill Distributing Co.,
159 F.Supp.3d 351 (S.D.N.Y. 2016) ……………………………………………………………16, 30

Fire & Police Pension Ass'n of Colorado v. Bank of Montreal,
368 F.Supp.3d 681 (S.D.N.Y. 2019) …………………………………………….…….…………… 2

Fincher v. Depository Trust and Clearing Corp.,
604 F.3d 712 (2d Cir. 2010) ……………………………………………………………...……… 35

Fraser v. MTA Long Island Rail Road,
295 F.Supp.3d 230 (E.D.N.Y. 2018) …………………………………………………………… 27

Gibson v. Brown,
1999 WL 1129052 (E.D.N.Y. Oct. 19, 1999) …………………………………………… 33, 42

Gilbert v. Indeed, Inc.,
513 F.Supp.3d 374 (S.D.N.Y. 2021) …………………………………………...……………….7

Goldlawr, Inc. v. Heiman,
369 U.S. 463 (1962) …………………………………………………………………………… 4

Gomez v. New York City Dept. of Educ.,
21-CV-01711 (AT) (SN), 2022 WL 4298728 (S.D.N.Y. Sept. 19, 2022) ……………………………36

Gonzalez v. City of New York,
377 F.Supp.3d 273 (S.D.N.Y. 2019) …………………………………………….……………… 39

Gorman v. Covidien, LLC,
146 F.Supp.3d 509 (S.D.N.Y. 2015) …………………………………………….……………… 30

Graziadio v. Culinary Inst. of Am.,
817 F.3d 415 (2d Cir. 2016) ………………………………………………………………… 16

Gronne v. Apple Bang for Sav.,
98-CV-6091 (JS) (MLO), 2000 WL 298914 (E.D.N.Y. Feb. 14. 2000), aff'd, 1 Fed.Appx. 64 (2d Cir. 2001)…27

Gulf Ins. Co. v. Glasbrenner,
417 F.3d 353 (2d Cir. 2005) …………………………………………………………………… 3

Hagan v. City of New York,
39 F.Supp.3d 481 (S.D.N.Y. 2014) …………………………………………………………… 29

Hardwick v. Auriemma,
116 A.D.3d 465 (1st Dept. 2014) …………………………………………………………… 10

Harris v. N.Y.C. Human Resources Administration,
20-CIV-2011 (JPC), 2022 WL 3100663 (S.D.N.Y. Aug. 4, 2022) ………………………………………… 13

Heba v. New York State Division of Parole,
537 F.Supp.2d 457 (E.D.N.Y. 2007) ……………………………………………………………33, 34

Hoffman v. Parade Publications,
933 N.E.2d 744 (N.Y. 2010) …………………………………………………..…………… 9, 10, 11, 12

Hollander v. Am. Cyanamid Co.,
895 F.2d 80 (2d Cir. 1990) …………………………………………………………………..…38

Iacovacci v. Monticciolo,
18-CIV-7984 (JFK), 2019 WL 2074584 (S.D.N.Y. May 9, 2019) ………………………..…………… 20

In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,
No. 18-cv-4993, 2021 WL 1178216 (S.D.N.Y. Mar. 29, 2021) ……………………………..…………2, 3, 5

In re Foreign Exch. Benchmark Rates Antitrust Litig.,
No. 13-cv-7789, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) …………………………..……………2

In re Schneorson,
645 B.R. 146 (E.D.N.Y. 2022) …………………………………………………………… 24

In re Terrorist Attacks on September 11, 2001,
714 F.3d 659 (2d Cir. 2013) ……………………………………………………..……………… 2

Jackson v. County of Rockland,
450 Fed.Appx. 15 (2d Cir. 2011) …………………………………………………………… 24

Jenkins v. Arcade Bldg. Maintenance,
44 F.Supp.2d 524 (S.D.N.Y. 1999) …………………………………………………….....32

Lambui v. Collins,
14-CV-6457 (JS) (AYS), 2015 WL 5821589 (E.D.N.Y. Sept. 30, 2015) ……………………………..…9, 10

Licci v. Lebanese Canadian Bank, SAL,
673 F.3d 50 (2d Cir. 2012) ……………………………………………………………… 2

Littlejohn v. City of New York,
795 F.3d 297 (2d Cir. 2015) …………………………………………………………………5, 23

Lopez v. Metropolitan Life Ins. Co.,
930 F.2d 157 (2d Cir. 1991) ………………………………………………………………29, 30

Love v. Premier Utility Services LLC,
186 F.Supp.3d 248 (E.D.N.Y. 2016) ……………………………………………………32

Malena v. Victoria's Secret Direct, LLC,
886 F.Supp.2d 349 (S.D.N.Y. 2012) …………………………………………………………44

Mandavia v. Columbia Univ.,
912 F.Supp.2d 119 (S.D.N.Y. 2012) …………………………………………..…….…………36

Mandell v. Cnty. of Suffolk,
316 F.3d 368 (2d Cir. 2003) …………………………………………………………….……29

Maney v. Coming, Inc.,
547 F.Supp.2d 221 (W.D.N.Y. 2007) ………………………………………………… 40

Mattera v. JPMorgan Chase Corp.,
740 F.Supp.2d 561 (S.D.N.Y. 2010) ……………………………………………………15

Max v. Lissner,
22-CV-5070 (VEC), 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ………………………………18, 19, 21

Mazyck v. Metro. Transp. Auth.,
893 F.Supp.2d 574 (S.D.N.Y. 2012) ………………………………………………….. 41

McHenry v. Fox News Network, LLC,
510 F.Supp.3d 51 (S.D.N.Y. 2020) ……………………………………………………… 41

Meserole St. Recycling, Inc. v. CSX Transp., Inc.,
No. 06-CV-04652 (CBA), 2007 WL 2891424 (E.D.N.Y. Sept. 28, 2007) …………………………… 4

Mihalik v. Credit Agricole Chuvreaux North America, Inc.,
715 F.3d 102 (2d Cir. 2013) ………………………………………………………… 38, 39

Moccio v. Cornell Univ.,
759 F.2d 989 (2d Cir. 1985), cert denied, 474 U.S. 829 (1985) …………………………………… 39

Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.,
No. 19-CV-9193, 2021 WL 1226984 (S.D.N.Y. Mar. 21, 2021) ……………………………… 3

Morisseau v. DLA Piper,
532 F.Supp.2d 595 (S.D.N.Y. 2008) ……………………………………………… 15

Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills
815 F.Supp.2d 679 (S.D.N.Y. 2011) …………………………………………………… 30

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
460 U.S. 1 (1983) ………………………………………………………………… 21

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,
673 F.3d 84 (2d Cir. 2012) …………………………………………..………………………20

Patterson v. County of Oneida,
375 F.3d 206 (2d Cir. 2004) ……………………………………………………..………… 40

Pedroza v. Ralph Lauren Corp.,
19-CV-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) …………………………………9, 10

Pilgrim v. McGraw-Hill Companies, Inc.,
599 F.Supp.2d 462 (S.D.N.Y. 2009) …………………………………………………..……… 40

Quarless v. Bronx-Lebanon Hosp. Ctr.,
228 F.Supp.2d 377 (S.D.N.Y. 2002) ………………………………………………………….... 29

Raghavendra v. N.L.R.B.,
08-CIV-8120 (PAC) (HBP), 2009 WL 5908013 (S.D.N.Y. Aug, 27, 2009) ……………………….…. 40

Rates Tech. Inc. v. Cequel Commc'ns, LLC,
15 F.Supp.3d 409 (S.D.N.Y. 2014) ……………………………………………………..………….7

Reeves v. Sanderson Plumbing Products, Inc.,
503 U.S. 133 (2000) ……………………………………………………………………………5, 23

Robles v. Cox and Co., Inc.,
841 F.Supp.2d 615(E.D.N.Y. 2012) …………………………………………………...………10, 11

Robles v. Goddard Riverside Community Center,
2009 WL 1704627 (S.D.N.Y. June 17, 2009) ………………………………..………………….…41, 42

Robles v. Medisys Health Network, Inc.,
19-CV-6651 (ARR) (RML), 2020 WL 3403191 (E.D.N.Y. June 19, 2020) …………………………13, 14

Ruhrgas AG v. Marathon Oil Co.,
526 U.S. 574 (1999) ……………………………………………………………………...…………… 2

Schwapp v. Town of Avon,
118 F.3d 106 (2d Cir. 1997) ………………………………………………………………….……… 32

Simmons Grant v. Quinn Emanuel Urquhart & Sullivan, LLP,
915 F.Supp.2d 498 (S.D.N.Y. 2013) ……………………………………………………………29

Sitgraves v. Fed. Home Loan Mtg. Corp.,
265 F.Supp.3d 411 (S.D.N.Y. 2017) …………………………………………………………… 21

Slattery v. Swiss Reinsurance America Corp.,
248 F.3d 87 (2d Cir. 2001) …………………………………………………………………………14

Sowemimo v. D.A.O.R. Sec., Inc.,
43 F.Supp.2d 477 (S.D.N.Y. 1990) ………………………………………………………..………40

Stanley v. City University of New York,
18-CIV-4844 (PAE), 2023 WL 271418 (S.D.N.Y. Mar. 30, 2023) …………………………….………17

Tex. Dep't of Cmty. Affairs v. Burdine,
450 U.S. 248 (1981) …………………………………………………………………… 29

United States ex rel. Donohue v. Carranza,
585 F.Supp.3d 383 (S.D.N.Y. 2022) ……………………………………………………4

U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,
110 F.3d 861 (2d Cir. 1997) ………………………………………...……………3, 7

Wahlstrom v. Metro-North Commuter R. Co.,
89 F.Supp.2d 506 (S.D.N.Y. 2000) …………………………………………………....9

Ward's Cove Packaging Co. v. Atonio,
490 U.S. 642 (1989) …………………………………………………………………..29

Whidbee v. Garzarelli Food Specialties, Inc.,
223 F.3d 62 (2d Cir. 2000) ………………………………………………………… 32

Williams v. New York City Hous. Auth.,
61 A.D.3d 62 (1st Dept. 2009) …………………………………………………………38

Williams v. Time Warner, Inc.,
09-CIV-2962 (RJS), 2010 WL 846970 (S.D.N.Y. Mar. 3, 2010), aff'd, 440 Fed.Appx. 7
2d Cir. 2011) (unpublished) …………………………………………………………15

Ziccarelli v. NYU Hospitals Center,
247 F.Supp.3d 438 (S.D.N.Y. 2017) ………………………………………………16, 17

## STATUTES

42 U.S.C. § 1981 …………………………………………………..1, 22, 23, 32, 35, 40, 41, 43, 44, 46

CPLR § 301 …………………………………………………………………………5
CPLR § 302…………………………………………………………………………5, 6, 7

The New York State Human Rights Law
(New York Executive Law § 296) …………………………………………22, 23, 30, 32, 35, 41- 44, 46
The New York City Human Rights Law
(Title 8 of the Administrative Code of the City of New York) …………………………22, 38-44, 46

N.Y. Civ. Rights Law § 70-a ………………………………………………………...………18, 20
N.Y. Civ. Rights Law § 76-a …………………………………………………………………18
N.Y. Civ. Rights Law § 76-a(2)…………………………………………………………………18

28 U.S.C. § 1391 ……………………………………………………………….…………3, 7, 8
28 U.S.C. § 1391(b) ……………………………………………………………….……3, 7

28 U.S.C. § 1391(b)(1) ...................................................................................8

28 U.S.C. § 1391(b)(2) ...................................................................................8

28 U.S.C. § 1391(b)(3) ................................................................................ 8

28 U.S.C. § 1404(a) ................................................................................ ....8

28 U.S.C. § 1406(a) ..............................................................................4, 8

29 U.S.C. § 2612(a)(1) ...........................................................................12

29 U.S.C. § 2611(2)(A) ........................................................................... 13

29 U.S.C. § 2611(4)(A)(i)..................................................................13, 14

29 U.S.C. § 2611(4)(A)(ii)(I)..................................................................16

## **REGULATIONS**

29 C.F.R. § 825.104(a) .................................................................................14

## **OTHER AUTHORTIES**

Federal Rule of Civil Procedure

12(b)(2)...........................................................................................1, 2

12(b)(3)...........................................................................................2, 3

12(b)(6) ....................................................................... 2, 4, 22

## PRELIMINARY STATEMENT

Defendants Napoli Shkolnik, PLLC (the "Defendant Firm"), Paul Napoli, Marie Napoli, and Hunter Shkolnik (the "Individual Defendants") (collectively the "Defendants") submit this memorandum of law in support of their motion to dismiss the Complaint filed by Heather Palmore (the "Plaintiff") on February 27, 2023 (the "Complaint") pursuant to Rules 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiff alleges race and disability discrimination, harassment/hostile work environment, and retaliation in violation of 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), and a violation of the New York Anti-SLAPP law.

The Defendants assert that they did not engage in any of the conduct alleged in the Complaint. Rather, as is more completely set forth in the Defendant Firm's state court action against the Plaintiff, the Plaintiff took advantage of the Defendant Firm's remote work environment to quiet quit from her job, while she simultaneously competed with the Defendant Firm by operating her own law practice. Additionally, the Plaintiff failed to bring into the Defendant Firm a fraction of the hundreds of clients per year that she promised, and also misrepresented her skillset and experience as an attorney. Further, when the Plaintiff realized she likely would be terminated from her employment, she made disparaging statements about the Defendant Firm.

The Defendants assert that the Plaintiff's Complaint in this lawsuit consists entirely of factual allegations that are conclusory and neutral as to the Plaintiff's membership in a protected class or engagement in alleged protected activity. All of the allegations in the Complaint regarding alleged discrimination and retaliation require an inferential leap that is completely unsupported by the facts. The Complaint is glaringly devoid of concrete particulars relating to any discriminatory, harassing, or retaliatory conduct. Therefore, the Defendants move this Court to dismiss the Complaint in its entirety for lack of

1

personal jurisdiction over the Individual Defendants, improper venue, and failure to state a claim upon which

relief can be granted as to all of the Causes of Action alleged in the Complaint.

## STANDARD OF REVIEW

The Defendants move to dismiss the Complaint pursuant to FRCP 12(b)(2) for lack of personal

jurisdiction over the Individual Defendants, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a

claim upon which relief can be granted.

### 12(b)(2) – Lack of Personal Jurisdiction Over the Individual Defendants

A court's "[j]urisdiction to resolve cases on the merits requires . . . authority over the parties (personal

jurisdiction), so that the court's decision will bind them." *Fire & Police Pension Ass'n of Colorado v. Bank of*

*Montreal*, 368 F.Supp.3d 681, 692 (S.D.N.Y. 2019), quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574,

577 (1999). To overcome a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction filed prior to

discovery, the plaintiff must have pled "in good faith . . . legally sufficient allegations of jurisdiction." *See Ball*

*v. Metallurgie Hoboken-Overpelt, SA.,* 902 F.2d 194, 197 (2d Cir. 1990). At the pre-discovery stage, the

plaintiff may rely on the allegations in the complaint to establish jurisdiction. *Dorchester Fin. Sec., Inc. v.*

*Banco BRJ, S.A.,* 722 F.3d 81, 85 (2d Cir. 2013). However, the court adjudicating a Rule 12(b)(2) motion to

dismiss "will not draw argumentative inferences in the plaintiff's favor . . . nor [will it] accept as true a legal

conclusion couched as a factual allegation." *See In re Terrorist Attacks on September 11, 2001,* 714 F.3d

659, 673 (2d Cir. 2013) (citation omitted).

"A [plaintiff's] prima facie showing of personal jurisdiction requires: (1) procedurally proper service of

process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective,' and (3)

that 'the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles.'" *In re*

*Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2016 WL 1268267, at *1 (S.D.N.Y. Mar.

31, 2016), quoting *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). "To allege

personal jurisdiction over a defendant, group pleading is not permitted." *In re Aegean Marine Petroleum*

*Network, Inc. Sec. Litig.,* No. 18-cv-4993, 2021 WL 1178216, at *12 (S.D.N.Y. Mar. 29, 2021); *see also Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.,* No. 19-CV-9193, 2021 WL 1226984, at *39 (S.D.N.Y. Mar. 21, 2021) ("It is well-established in this Circuit that plaintiff cannot simply 'lump' defendants together for pleading purposes . . . . This is so even where 'allegations are made against families of affiliated entities.'"). "Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant . . . with respect to *each* claim asserted." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig., supra*, 2021 WL 1178216, at *12 (citation omitted) (emphasis added.).

**12(b)(3) – Improper Venue**

"On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-09875 (JPO), 2018 WL 941747, at *1 (S.D.N.Y. Feb. 16, 2018) (internal quotations omitted). "Where no evidentiary hearing has been held, 'the plaintiff need only make a *prima facie* showing of [venue].'" *Del Toro v. Novus Equities, LLC*, No. 20-CV-01002 (NSR), 2021 WL 5567618, at *2 (S.D.N.Y. Nov. 29, 2021), citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

"[T]he general federal venue provisions [are] set out in 28 U.S.C. § 1391." *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997). That statute provides, in relevant part, that venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See* 28 U.S.C. § 1391(b). "A court may consider facts outside of the pleadings when resolving a motion to dismiss for improper venue." *Detroit Coffee Co., LLC v. Soup for You, LLC*, *supra*, 2018 WL 941747, at *1.

If the plaintiff filed the case in an improper venue, the court can either dismiss it or, "if it be in the interest of justice," transfer it to a district or division in which it could have been brought pursuant to 28 U.S.C. § 1406(a). *United States ex rel. Donohue v. Carranza*, 585 F.Supp.3d 383, 388 (S.D.N.Y. 2022). "The decision of whether to dismiss or transfer lies within the broad discretion of the district court." *Id.* "When determining whether transfer pursuant to Section 1406(a) is appropriate, a court may [consider] the ultimate goal of the 'expeditious and orderly adjudication of cases and controversies on their merits.'" *See Meserole St. Recycling, Inc. v. CSX Transp., Inc.*, No. 06-CV-04652 (CBA), 2007 WL 2891424, at *4 (E.D.N.Y. Sept. 28, 2007), quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).

**12(b)(6) – Failure to State a Claim Upon Which Relief May Be Granted**

On a Rule l2(b)(6) motion, the Supreme Court held the following:

> [while] a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although details are not required, the *Twombly* standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [for]… [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, the Supreme Court has further held,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.*[1] The Second Circuit confirmed that the Plaintiff must provide plausible facts to support a minimum inference of discriminatory motivation to survive a motion to dismiss. *See Littlejohn*, 795 F.3d at 311. The Court must determine whether plaintiff can satisfy her "ultimate burden of persuading the trier of fact that the defendants *intentionally discriminated* against the plaintiff." *Reeves v. Sanderson Plumbing Products, Inc.*, 503 U.S. 133, 143 (2000) (citation omitted) (emphasis added); *Littlejohn*, 795 F.3d at 311.

## ARGUMENT

### POINT I

### THE COURT LACKS PERSONAL JURISDICTION
### OVER THE INDIVIDUAL DEFENDANTS

"[T]he plaintiff is required to establish personal jurisdiction separately over each defendant . . . with respect to *each* claim asserted." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig., supra*, 2021 WL 1178216, at *12 (citation omitted) (emphasis added). Here, the Plaintiff cannot demonstrate a statutory basis for jurisdiction as to each of the Individual Defendants with respect to each claim. Personal jurisdiction over the Individual Defendants, all of whom reside and work in Puerto Rico, does not exist because neither C.P.L.R. § 301 nor § 302 confer jurisdiction. A non-resident individual is not subject to jurisdiction under § 301 unless he or she does business in New York on his or her own behalf, rather than on behalf of a corporation. *See Brinkmann v. Adrian Carriers, Inc.*, 29 A.D.3d 615, 815 N.Y.S.2d 196 (2006). The Complaint does not allege, and could not plausibly allege, that the Individual Defendants were doing business in New York on their own behalf, because the only alleged interactions between the Individual Defendants and the Plaintiff were in the context of her employment with the Defendant Firm. Therefore, § 301 does not confer jurisdiction.

---

[1] The Second Circuit has confirmed that *Iqbal's* pleading requirements apply to employment discrimination claims. *See Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015).

A non-resident individual is not subject to jurisdiction under § 302 unless the cause of action arises from (1) the defendant's transaction of business in New York; (2) his or her commission of a tortious act within the state; or (2) his or her commission of a tortious act without the state causing injury to person or property within the state, if certain conditions related to his or her contacts with the state or participation in interstate or international commerce are present. Furthermore, a corporate officer is not subject to jurisdiction based solely on the corporation's transaction of business in New York. Instead, the plaintiff must "rely on facts establishing that the corporate officer was the driving force behind the New York transactions[,] ... [and] [t]he facts must indicate personal involvement on behalf of the corporate officer in the activities giving rise to the suit." *In re Lyman Good Dietary Supplements Litig.*, No. 17-cv-8047, 2018 WL 3733949, at *8 (S.D.N.Y. Aug. 6, 2018) (citations omitted). "Even where the corporate officer was principally involved in the transaction that gave rise to Plaintiff's claim, courts have held that personal jurisdiction cannot be established absent an allegation that the company's activity was performed for the corporate officer's benefit and with his knowledge and consent." *Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 26 (E.D.N.Y. 2013) (footnote omitted); *see also Reynolds Corp. v. Nat'l Operator Servs., Inc.*, 73 F. Supp. 2d 299, 303 (W.D.N.Y. 1999) ("[J]ust because the corporation is subject to jurisdiction does not, *ipso facto,* subject every corporate officer to personal jurisdiction. Something more is required.").

Here, the Complaint does not plausibly allege the Individual Defendants' involvement in the events that allegedly gave rise to the Complaint. They did not have daily contact with the Plaintiff. Paul Napoli Declaration, ¶ 8; Marie Napoli Declaration, ¶ 9; Hunter Shkolnik Declaration, ¶ 9. Moreover, the Defendant Firm hired Plaintiff with the understanding that she was an experienced trial attorney whose work would be largely self-directed, as indicated by her title, "Chief Trial Counsel." Paul Napoli Declaration, ¶ 5; Marie Napoli Declaration, ¶ 5; Shkolnik Declaration, ¶ 5. Finally, the Complaint does not contain facts from which a jury could conclude that the wrongful acts alleged were for the Individual Defendant's benefit. Accordingly,

6

jurisdiction over the Individual Defendants does not exist based on the Defendant Firm's transaction of business in New York and the Individual Defendants' status as partners under § 302(a)(1).

The Complaint also does not plausibly allege tortious conduct on the part of the Individual Defendants, within or without New York, as would be necessary to confer personal jurisdiction under § 302(a)(2) or (3). The facts alleged do not support the Plaintiff's claims. Instead, the Complaint relies on conclusory assertions, unfounded speculation, and inferences that are not supported by the facts alleged. (*See* Points VI–VII, *infra*). Thus, the Individual Defendants' alleged conduct does not rise to the level of the requisite tortious conduct required for the exercise of jurisdiction. *See Gilbert v. Indeed, Inc.*, 513 F.Supp.3d 374, 416–418 (S.D.N.Y. 2021) (holding that under § 302, the plaintiff need not prove the tortious conduct, but is required to state a colorable cause of action). Without a statutory basis for jurisdiction, the Court lacks personal jurisdiction over the Individual Defendants irrespective of the Due Process analysis. *See Rates Tech. Inc. v. Cequel Commc'ns, LLC*, 15 F.Supp.3d 409 (S.D.N.Y. 2014).

**POINT II**

**VENUE IS IMPROPER IN THE
SOUTHERN DISTRICT OF NEW YORK**

"[T]he general federal venue provisions [are] set out in 28 U.S.C. § 1391." *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997). That statute provides, in relevant part, that venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See* 28 U.S.C. § 1391(b).

7

Pursuant to 28 U.S.C. § 1391, venue is improper in the SDNY. None of the Individual Defendants reside in New York. Rather, all reside in Puerto Rico. Therefore, venue in the SDNY cannot be based on 28 U.S.C. § 1391(b)(1), which provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Furthermore, a substantial part of the alleged events of which the Plaintiff complains did not occur in the SDNY. The Plaintiff resides on Long Island, which is in the EDNY. *See* Complaint ¶¶ 16, 207. She worked at the Defendant Firm's office in Melville, New York, which is also in the EDNY, or remotely. *See* Compl. ¶¶ 207, 224–226. The Plaintiff did not work at the Defendant Firm's Manhattan office. Paul Napoli Declaration, ¶¶ 6–7; Marie Napoli Declaration, ¶¶ 7–8; Shkolnik Declaration, ¶¶ 7–8. Finally, a substantial part of the events or omissions giving rise to the claim occurred either in the Melville, NY in the EDNY where the Plaintiff worked, or in Puerto Rico, where the Individual Defendants lived and worked. Compl. ¶¶ 5, 16, 68–69, 89–90, 95–98, 215–17, 224, 226. Therefore, venue in the SDNY cannot be based on 28 U.S.C. § 1391(b)(2), which provides in relevant part that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Finally, venue in the SDNY cannot be based on 28 U.S.C. § 1391(b)(3), because (b)(3) only applies when (b)(1) and (2) do not provide a basis for venue in any district.

If the Court does not dismiss this case based upon this and the other grounds set forth herein, it should transfer it to the EDNY pursuant to 28 U.S.C. § 1404(a) or § 1406(a). Transfer to the EDNY would be proper based on convenience of the parties and availability of evidence. Convenience of party and non-party witnesses is the most important factor to be considered by a district court deciding whether to transfer a case. *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 657 (S.D.N.Y. 1998). Plaintiff lives and, while employed by the Defendant Firm, worked in the EDNY. Compl. ¶ 16; Paul Napoli Declaration, ¶¶ 6–7; Marie Napoli Declaration, ¶¶ 7–8; Shkolnik Declaration, ¶¶ 7–8. She cannot therefore argue that transfer to the EDNY would inconvenience her. Furthermore, the location of relevant documents and the relative ease of access to sources of proof indicate that transfer to the EDNY would be appropriate. Most of the relevant documents

and witnesses would be found there because, again, Plaintiff lives and worked there. Plaintiff asserts multiple instances of allegedly discriminatory, retaliatory, or harassing conduct that occurred at her workplace in the EDNY, involving purported witnesses and evidence in the EDNY. Thus, transfer to the EDNY would serve the interests of justice and judicial economy by facilitating access to evidence and witnesses. Moreover, it would not inconvenience the Plaintiff. Therefore, if the Court does not dismiss this case, it should transfer it to the EDNY.

## POINT III

### THE PLAINTIFF CANNOT AVAIL HERSELF
### OF THE PROTECTIONS OF THE NYCHRL

Plaintiff's claims arising under the New York City Human Rights Law (the "NYCHRL") must be dismissed because Plaintiff has not and cannot allege the requisite connection between the conduct alleged in the Complaint and New York City sufficient to establish her claims. To state a claim under the NYCHRL, "a plaintiff must allege that [she] was discriminated against by the defendant within New York City." *Lambui v. Collins*, 14-CV-6457 (JS) (AYS), 2015 WL 5821589, at *4 (E.D.N.Y. Sept. 30, 2015); *Hoffman v. Parade Publications*, 933 N.E.2d 744, 746 (N.Y. 2010) ("[I]t is clear from the [NYCHRL's] language that its protections are afforded only to those who inhabit or are "persons in" the City of New York.").

In addition to requiring that the alleged discriminatory acts have taken place within New York City, courts interpreting the NYCHRL have also regularly held that nonresident plaintiffs, such as the Plaintiff in this matter,[2] must also allege that the discriminatory conduct had an impact on the plaintiff in New York City. *Hoffman*, 933 N.E.2d at 748 (holding that the protections of the NYCHRL do not extend to nonresidents "[who are] unable to demonstrate that the impact of the discriminatory act was felt" in the City); *Pedroza v. Ralph Lauren Corp.*, 19-CV-08639 (ER), 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020) ("[A] non-resident plaintiff must allege that the discriminatory conduct had an impact in New York City."); *see also Wahlstrom v. Metro-*

---

[2] It is undisputed that at all relevant times, the Plaintiff resided on Long Island, NY. Compl. ¶ 16.

*North Commuter R. Co.*, 89 F.Supp.2d 506, 527 (S.D.N.Y. 2000) ("[T]he [NYCHRL] only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office."). The Court must look to "where the impact occurs, not the place of its origination, to determine the location of the discriminatory acts, and the impact needs to be felt by the plaintiff in New York City." *Pedroza*, 2020 WL 4273988, at *2. Courts have repeatedly dismissed NYCHRL claims at the pleading stage for lack of subject-matter jurisdiction where "the impact of the alleged discrimination was felt" outside of New York City. *See, e.g., Amaya v. Ballyshear LLC*, 340 F.Supp.3d 215 (E.D.N.Y. 2018); *Lambui v. Collins*, 2015 WL 5821589, at *3; *Hardwick v. Auriemma*, 116 A.D.3d 465, 466– 68 (1st Dept. 2014); *EEOC v. Bloomberg L.P.*, 967 F.Supp.2d 816, 865 (S.D.N.Y. 2013). The consistent theme running throughout *Hoffman* and its progeny is that what matters is where the alleged discriminatory act is *felt* by the plaintiff, and not where it purportedly originated. *See Hardwick*, 116 A.D.3d at 466–68; *Benham v. eCommission Sols., LLC*, 118 A.D.3d 605, 606 (1st Dept. 2014) ("[W]hether New York courts have subject matter jurisdiction over a nonresident plaintiff's claims under the [NYCHRL] turns primarily on her physical location at the time of the alleged discriminatory acts.").

A plaintiff's general allegations of discriminatory acts, without specifying whether such acts occurred or were felt in New York City, are insufficient to state a claim under the NYCHRL. *Robles v. Cox and Co., Inc.*, 841 F.Supp.2d 615, 623 (E.D.N.Y. 2012). Critically, courts have consistently refused to expand the scope of the "impact test" to cover nonresidents who do not regularly work in New York City. *See, e.g., Amaya v. Ballyshear LLC*, 340 F.Sup.3d 215, 222 (E.D.N.Y. 2018). Courts have also repeatedly held that a nonresident plaintiff's occasional meetings in or travel to New York City are tangential and do not satisfy the *Hoffman* impact requirement. *Robles*, 841 F.Supp.2d at 623. Even where a plaintiff alleges that a couple of discriminatory acts took place in New York City, if the vast majority or bulk of alleged discriminatory acts took place outside of New York City, a plaintiff will not be able to withstand a motion to dismiss. *See Lambui v. Collins*, 2015 WL 5821589, at *5 (holding that plaintiff did not adequately allege that she was employed within

New York City such that she could invoke the protections of the NYCHRL where she alleged only two incidents of conduct that took place in New York City, because the "vast majority" of the alleged conduct took place on Long Island); *Hoffman v. Parade Publications*, 933 N.E.2d 744, 745 (N.Y. 2010) (dismissing nonresident plaintiff NYCHRL claims for lack of subject matter jurisdiction because the plaintiff could not meet the impact requirement by showing only that he attended quarterly meetings in the City, had managers who worked in the City, and that the decision to terminate him was made in the City).

The Complaint makes abundantly clear that the Plaintiff lived and worked on Long Island, well outside the borders of New York City, and not *in* New York City. The Plaintiff has not plead that any of the alleged culpable conduct took place in New York City. The Plaintiff cannot plead that any alleged discriminatory acts took place in New York City because at no time throughout her employment did she work at the Defendants' New York City office. Paul Napoli Declaration, ¶¶ 6–7; Marie Napoli Declaration, ¶¶ 7–8; Shkolnik Declaration, ¶¶ 7–8. The Plaintiff did not have a dedicated office in the Firm's New York City Office. *Id*. The Plaintiff worked only at the Firm's Melville, NY office on Long Island. *Id.*

The Plaintiff also has not plead that she felt the impact of any alleged discriminatory conduct within the five boroughs. The Complaint is either silent as to the location of the alleged discriminatory, retaliatory, and harassing conduct to which the Plaintiff claims that she was subjected, or it states that such alleged conduct took place or was felt in locations *other than New York City*. Compl. ¶¶ 68, 89, 95, 198, 206–11, 215, 224; *see Robles*, 841 F.Supp.2d 615, 623 (E.D.N.Y. 2012) ("Plaintiff's general allegation of 'discriminatory acts,' which do not identify any particular acts that allegedly occurred in New York City, are insufficient to state a claim under the NYCHRL."). The only allegations in the Complaint that are even tangentially related to New York City are (1) a general allegation appearing under the "Parties" heading which states that the Plaintiff worked in the Defendant Firm's New York City office, which is disputed, and (2) an allegation that the Plaintiff sent an email in which she suggested that the Defendant Firm consider marketing its services in New York City. Compl. ¶¶ 16, 64; Paul Napoli Declaration, ¶¶ 6–7; Marie Napoli Declaration, ¶¶ 7–8; Shkolnik

11

Declaration, ¶¶ 7–8. These two barebones allegations related to New York City do not even come close to the City-related allegations in *Hoffman*, which the court nonetheless found insufficient to satisfy the nonresident impact requirement. 933 N.E.2d at 745.

Where the Complaint does identify specific locations where the alleged discriminatory, retaliatory, and harassing conduct occurred and/or was felt, it makes clear that such conduct took place and was felt only in locations *other than New York City*, including locations on Long Island and in Puerto Rico. For example, the Plaintiff alleges that she was unable to access the Defendant Firm's network on her computer *at the Melville office*, that a riddle was written on a whiteboard *at the Melville office*, that she was not invited to social events held *on Long Island*, and that she attended a business conference *in Puerto Rico*. Compl. ¶¶ 89, 198, 208, 215, 224. It is clear that the conduct alleged in the Complaint took place and was felt only in locations other than New York City.

Thus, the Plaintiff cannot avail herself of the protections of the NYCHRL and, accordingly, Causes of Action five and six of the Complaint should be dismissed with prejudice as to all Defendants.

## POINT IV

### PLAINTIFF'S CAUSES OF ACTION ALLEGING RETALIATION AND INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT MUST BE DISMISSED

The Plaintiff's claims for retaliation and interference in violation of the Family and Medical Leave Act ("FMLA") must be dismissed because she has failed to state claims upon which relief can be granted. The FMLA entitles eligible employees to twelve workweeks of unpaid leave during any twelve-month period for any of several qualifying reasons. 29 U.S.C. § 2612(a)(1). "There are four principal facets to the FMLA: (1) the employers to which it applies; (2) the employees who are eligible for FMLA leave; (3) the personal or family relationships in question; and (4) the qualifying reasons for the requested leave." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 108 (2d Cir. 2017).

### A. Plaintiff Has Fatally Failed to Plead the Threshold and Dispositive Requirement of FMLA Eligibility in Both her FMLA Interference and Retaliation Claims

The Plaintiff's FMLA interference and retaliation claims fail because she has fatally failed to plead the threshold eligibility requirements germane to claims of FMLA violations.

"To be eligible for FMLA leave, an employee must have been employed for at least twelve months by the employer from whom she is requesting leave, and she must have worked at least 1,250 hours with that employer in the twelve months prior to the beginning of her medical leave." 29 U.S.C. § 2611(2)(A); *Arroyo-Horne v. City of New York*, 831 Fed.Appx. 536, 539 (2020). A plaintiff who fails to allege that they were employed for at least twelve months and that they worked at least 1,250 hours in the twelve-month period prior to their requests for FMLA leave has not established a prima facie FMLA interference or retaliation claim. *Id.* (affirming dismissal by district court of plaintiff's FMLA retaliation and interference claims for failing to allege that she worked 1,250 hours in the twelve month period prior to her requests for FMLA leave); *Harris v. N.Y.C. Human Resources Administration*, 20-CIV-2011 (JPC), 2022 WL 3100663, at *18 (S.D.N.Y. Aug. 4, 2022) (same); *Bernheim v. New York City Department of Education*, 19-CV-9723 (VEC) (JLC), 2021 WL 2619706, at *5 (S.D.N.Y. June 25, 2021) (same); *DeLeon v. Teamsters Local 802, LLC*, 20-CV-24 (RRM) (PK), 2021 WL 1193191, at *14 (E.D.N.Y. Mar. 29, 2021) (same); *Robles v. Medisys Health Network, Inc.*, 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *14 (E.D.N.Y. June 19, 2020) (same). Plaintiff's failure to allege that she (1) was employed for at least twelve months and (2) worked at least 1,250 hours in the twelve months prior to the beginning of her medical leave is fatal to her FMLA interference and retaliation claims.

Plaintiff has also failed to allege that the Defendant Firm was an FMLA-covered employer for purposes of her FMLA interference claim. The FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29

U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a). Plaintiff's failure to allege that the Defendant Firm was an FMLA-covered employer is also fatal to her FMLA interference claim. *See Robles*, 2020 WL 3403191, at *14 (holding that plaintiff failed to adequately allege that the defendant hospital was an FMLA-covered employer, even where the plaintiff alleged that the defendant employs over fifty individuals, because plaintiff failed to allege that the defendant "employs its more than fifty employees 'for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year'"), citing 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a). Plaintiff completely fails to include in the Complaint any allegations as to whether the Defendant Firm was an FMLA-covered employer, and her FMLA interference claim must be dismissed as a result.

**B. Plaintiff Has Failed to Establish a Prima Facie Claim of FMLA Retaliation Because She Cannot Show That any Alleged Adverse Employment Action Occurred Under Circumstances Giving Rise to a Reasonable Inference of Retaliatory Intent**

Plaintiff has failed to establish any indicia of retaliatory intent by any of the Defendants based on her FMLA leave. To establish a prima facie case of FMLA retaliation, Plaintiff must establish that (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012). "Where timing is the only basis for a retaliation claim, and gradual adverse actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (holding that where adverse employment actions were both part, and the ultimate product, of an "extensive period of progressive discipline" which began prior to engagement in protected activity, plaintiff could not sustain a claim of retaliation).

Plaintiff's Complaint makes clear that the alleged "retaliatory" actions undertaken by the Defendants following her FMLA leave of absence were actually part of a continued dialog regarding Plaintiff's significant job performance issues that began well before she ever requested FMLA leave. Plaintiff has unsuccessfully

attempted to create a temporal proximity between her application for FMLA leave and the alleged adverse employment actions where none exists. Plaintiff conveniently ignores the context of the alleged adverse employment actions and instead attempts to create a narrative that the Defendants took such adverse employment actions against her in response to her request for an FMLA leave of absence. This is merely a failed effort to manufacture a causal connection based only on temporal proximity sufficient to establish an inference of retaliatory intent despite the fact that documentation and communication of Plaintiff's poor performance began significantly and sufficiently earlier.

Plaintiff herself concedes that she had been notified of her unmitigated performance issues well before she ever took an FMLA leave. Compl. ¶¶ 164–67; *See Mattera v. JPMorgan Chase Corp.*, 740 F.Supp.2d 561, 582 (S.D.N.Y. 2010) ("[B]ecause plaintiff's documented poor performance began significantly and sufficiently earlier, plaintiff cannot establish that any such causal connection existed."); *Deebs v. Alston Transp., Inc.*, 346 Fed.Appx. 654, 658 (2d Cir. 2009) (prior nondiscriminatory adverse employment actions based on poor performance prior to plaintiff's engagement in protected activity precluded causal connection despite temporal proximity); *Dixon v. Int'l Federation of Accountants*, 09-CIV-2839 (HB), 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010), *aff'd*, 416 Fed.Appx. 107 (2d Cir. 2011) (unpublished) (repeated critiques of plaintiff's management skills prior to plaintiff's complaints of discrimination precluded causal connection despite temporal proximity); *Williams v. Time Warner, Inc.*, 09-CIV-2962 (RJS), 2010 WL 846970, at *6 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 Fed.Appx. 7 (2d Cir. 2011) (unpublished) (lessening of plaintiff's work responsibilities and exclusion of plaintiff from meetings and events prior to plaintiff's complaints of discrimination precluded causal connection despite temporal proximity); *Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 615 (S.D.N.Y. 2008) (complaints regarding plaintiff prior to plaintiff's complaint of discrimination precluded causal connection despite temporal proximity).

Therefore, Plaintiff has failed to make out a prima facie case of FMLA retaliation, and her claim must be dismissed with prejudice as to all Defendants.

**C. Plaintiff Has Failed to Establish her FMLA Interference and Retaliation Claims Against the Individual Defendants**

Plaintiff fails to establish FMLA interference and retaliation against each of the Individual Defendants. An individual may be held liable under the FMLA only if he or she is an "employer," which includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Whether an individual is an "employer" for purposes of the FMLA is determined by the economic reality test, under which courts ask whether the alleged employer possessed the power to control the worker in question, with an eye to the "economic reality" presented by the facts of each case. *See Ziccarelli v. NYU Hospitals Center*, 247 F.Supp.3d 438, 446 (S.D.N.Y. 2017). In short, courts ask "whether the putative employer controlled in whole or in part plaintiff's rights under the FMLA." *Id.* (citations omitted); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 423 (2d Cir. 2016) ("In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer controlled in whole or in part plaintiff's rights under the FMLA"). To survive a motion to dismiss, Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, "[she] must simply plead that the proposed individual defendants had substantial control over the aspects of employment alleged to have been violated." *Id.*

The Plaintiff fails to allege in the Complaint that any of the Individual Defendants controlled her rights under the FMLA or had any involvement with her FMLA leave. In fact, as is common in the workplace, the Plaintiff concedes in the Complaint that she dealt with Human Resources regarding her request for FMLA leave, which was granted. Compl. ¶ 240. The Complaint is devoid of *any mention at all* of Marie Napoli or Hunter Shkolnik with regard to the Plaintiff's request for and the taking of FMLA leave. With regard to Paul Napoli, the Plaintiff alleges only that he informed the Plaintiff of the Defendant Firm's policy and practice that she must provide medical documentation in support of her FMLA leave request. Such conduct does not constitute FMLA interference or retaliation. *See Fernandez v. Windmill Distributing Co.*, 159 F.Supp.3d 351,

16

365 (S.D.N.Y. 2016) (holding that a plaintiff's failure to plead facts giving rise to retaliatory or prejudicial intent is fatal to FMLA retaliation and interference claims). As discussed above, the remainder of the allegations regarding communications between the Plaintiff and Paul Napoli around the time of her FMLA leave were part of a continuing dialogue regarding the Plaintiff's work performance that began well before her FMLA leave, and do not constitute retaliation. (*See* Point IV.B, *supra*, and case law cited therein).

Further, the unsupported and conclusory allegations in the Complaint that the Individual Defendants allegedly aided and abetted in the interference with and/or retaliation against the Plaintiff when she took an FMLA leave of absence,[3] without additional facts to show that the Individual Defendants had substantial control over the Plaintiff's FMLA leave or had any specific involvement in any alleged interfering or retaliatory actions, (discussed above) is not sufficient to establish claims of FMLA interference and retaliation. *Ziccarelli*, 247 F.Supp.3d at 447. ("Plaintiff's allegations of aiding and abetting are legal conclusions unsupported by facts . . . [t]his allegation does not support the proposition that [the individual defendant] had substantial control over plaintiff's FMLA leave."); *see also Stanley v. City University of New York*, 18-CIV-4844 (PAE), 2023 WL 2714181, at *22 (S.D.N.Y. Mar. 30, 2023) (holding that the plaintiff's FMLA interference and retaliation claims failed in part because the plaintiff did not plead whether any of the individual defendants had the requisite substantial control over his FMLA leave).

## POINT V

## PLAINTIFF'S CLAIM FOR VIOLATION OF NEW YORK'S ANTI-SLAPP LAW IS IMPROPER AND SHOULD BE DISMISSED

### A.  Plaintiff Has Failed to Establish a Violation of New York's Anti-SLAPP Law

Plaintiff's claim for violation of New York's anti-SLAPP law should be dismissed because it is conclusory and it lacks any factual allegations from which the Court can plausibly infer that the Defendants violated the anti-SLAPP law by bringing a defamation action lacking a substantial basis in fact and law. New

---

[3] Compl. ¶¶ 310, 315.

York's anti-SLAPP law protects members of the public who choose to speak out in public regarding public issues. N.Y. Civ. Rights Law § 70-a; *Bennett v. Towers*, 982 N.Y.S.2d 843, 847 (N.Y. Sup. Ct. 2014). New York's anti-SLAPP law creates a cause of action for a defamation defendant if the defamation plaintiff commenced or continued the defamation lawsuit without a substantial basis in fact.[4] *Max v. Lissner*, 22-CV-5070 (VEC), 2023 WL 2346365, at *7 (S.D.N.Y. Mar. 3, 2023). In order for Plaintiff to establish a prima face claim of the Defendants' violation of New York's anti-SLAPP law, she must allege facts from which the Court may plausibly infer that the underlying state court litigation (a) was based on a publicly made statement involving an issue of public interest; and (b) was commenced without a substantial basis in fact and law. *Id.* at *9.

Purely private matters, such as those sent via email, are not matters of public concern or interest. *See Balliet v. With Prejudice of the Other Kottamasu*, 175 N.Y.S.3d 678, 689 (N.Y. Civ. Ct. 2022). Similarly, communications directed only to a limited, private audience are not matters of public concern under the anti-SLAPP law. *Id.* Likewise, statements that fall into the realm of mere gossip do not constitute matters of public concern. *Id.* A plaintiff must allege more than mere conclusory allegations that the underlying defamation complaint was "frivolous" in order to establish that the defamation complaint was commenced without a substantial basis in fact and law. Instead, she must specifically identify the actual statements in the defamation complaint which allegedly constitute a violation of the anti-SLAPP law and plead how or why the defamation plaintiff did not have a substantial basis in fact and law to bring the defamation complaint. *See Max*, 2023 WL 2346365, at *9–10.

---

[4] Plaintiff purports to state a claim under NYCRL § 76-a. Compl. ¶ 10. That provision, however, merely describes the circumstances under which "actual malice" must be proven to prevail in a lawsuit that is covered by the anti-SLAPP provision. *See* NYCRL § 76-a(2). The statutory basis for an affirmative anti-SLAPP claim resides in NYCRL § 70-a, which Plaintiff fails to allege or rely on in her Complaint.

The Plaintiff claims that the Defendants violated the anti-SLAPP law by bringing a lawsuit against her in state court for, *inter alia*, defamation.[5] Compl. ¶¶ 251–53. Plaintiff cannot demonstrate that the underlying state court lawsuit was brought against her by the Defendants based on a publicly made statement involving an issue of public interest. As a threshold matter, Plaintiff's alleged statements were not made publicly. Plaintiff claims that she sent private emails to her coworkers about alleged discrimination. Compl. ¶ 137. Plaintiff's private, intraoffice emails were sent only to a few individuals, and such communications do not constitute publicly made statements under the anti-SLAPP law. *See Balliet*, 175 N.Y.S.3d at 690 (holding that statements made via email to a limited group of recipients do not constitute public communications made in a place open to the public or a public forum, but instead are communications intended for "clearly a private limited audience"). Furthermore, Plaintiff's alleged complaints do not constitute matters of public interest or concern where they are nothing more than the perpetuation of gossip and anecdotes she learned from other employees, and where she made them via email to only a few individuals. Compl. ¶ 137; *Aristocrat Plastic Surgery, P.C. v. Silva*, 169 N.Y.S.3d 272, 275 (N.Y. App. Div. 1st Dept. 2022) (holding that statements directed only to a limited, private audience regarding mere gossip are not matters of public concern). Therefore, Plaintiff has failed to establish that her defamatory statements were publicly made and based on a matter of public concern.

Plaintiff also has failed to establish that the state court litigation was brought against her without a substantial basis in fact and law. Plaintiff makes only conclusory allegations that the Defendant Firm's lawsuit against her is "frivolous" and that the Defendants "have admitted that the lawsuit was and is retaliation for [Plaintiff's] decision to speak out about her claims of discrimination . . . ." Compl. ¶¶ 252, 254. Plaintiff fails to establish, or allege at all, how the lawsuit that was brought against her did not have a substantial basis in fact and law. Instead, she makes only conclusory allegations that the lawsuit is "frivolous" and then creates a

---

[5] Attached hereto as Exhibit A for the Court's reference is a true and accurate copy of the state court Complaint filed by the Defendant Firm.

false narrative for why the lawsuit was filed. Such self-serving and baseless allegations are not sufficient to establish that the state court litigation was commenced without a substantial basis in fact and law. *See Max*, 2023 WL 2346365, at *9–10. Because Plaintiff has failed to substantiate her conclusory assertions that the state court litigation is "frivolous," her anti-SLAPP claim fails as a matter of law and should be dismissed with prejudice as to all Defendants.

### B. The Court Should Abstain from Adjudication of and Dismiss Plaintiff's Anti-SLAPP Law Violation Claim Pursuant to the *Colorado River* Doctrine

Even assuming, *arguendo*, that the Plaintiff is able to adequately allege a claim under Civil Rights Law § 70-a, (which she has not and cannot), the Court should abstain on *Colorado River* grounds. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under the *Colorado River* doctrine, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). To determine whether abstention is appropriate pursuant to *Colorado River*, district courts must first determine whether the state and federal cases are parallel. *Id.* "Federal and state proceedings are parallel if 'substantially the same parties are contemporaneously litigating substantially the same issue[s]' in both forums." *Iacovacci v. Monticciolo*, 18-CIV-7984 (JFK), 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019). Proceedings are parallel when the state case claims involve the same factual allegations as those at issue in the federal case, even if the federal case includes a claim or claims not in the state case. *See id.* at *5.

If the proceedings are parallel, courts evaluate six factors to determine whether exceptional circumstances warrant abstention: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether

federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." *Niagara Mohawk Power Corp.*, 673 F.3d at 100–01.

Here, the Court should abstain on *Colorado River* grounds and dismiss Plaintiff's anti-SLAPP law violation claim because the factors identified above weigh heavily in favor of abstention. While there is no res and federal court may not be less inconvenient than state court for the parties, Plaintiff's anti-SLAPP law violation claim is undoubtedly parallel to the Defendant Firm's defamation claim pending in the state court. Both lawsuits involve the same sphere of facts and evidence. While the parties in each of the lawsuits are not identical, "perfect symmetry of parties and issues is not required" for *Colorado River* abstention. *Abe v. New York University*, 14-CV-9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016). Moreover, Plaintiff has raised the anti-SLAPP law as a critical part of her defense to the defamation complaint pending in state court, creating a "substantial likelihood that the state litigation will dispose of [the anti-SLAPP law violation] claim[] presented in the federal case." *Daizell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F.Supp.2d 590, 597 (S.D.N.Y. 2013). There is also a legitimate risk of piecemeal litigation, which is the "paramount consideration" in the abstention analysis. *Sitgraves v. Fed. Home Loan Mtg. Corp.*, 265 F.Supp.3d 411, 414 (S.D.N.Y. 2017) ("Avoiding of piecemeal litigation weighs in favor of abstention where a party's claims in the federal action can and should be handled as a defense to the [underlying] claim."), citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). The very purpose of abstention in such cases is to avoid "inconsistent and mutually contradictory determinations" in federal and state actions between the same parties. *Sitgraves*, 265 F.Supp.3d at 414. "This factor is particularly instructive here where [Plaintiff's] anti-SLAPP claim is asserted as a defense in the defamation suit." *Max v. Lissner*, 22-CIV-5070 (VEC), 2023 WL 2346365, at *10, n. 24 (S.D.N.Y. Mar. 3, 2023). Additionally, the state court litigation has proceeded beyond the early stage of this litigation, rendering abstention in this matter appropriate, and the state court procedures will be more than adequate to protect Plaintiff's rights, as she has already raised the state anti-SLAPP law as a defense to the defamation complaint.

Accordingly, the Court should dismiss with prejudice Plaintiff's anti-SLAPP law violation claim under the *Colorado River* doctrine as to all Defendants.

**POINT VI**

**PLAINTIFF'S CAUSES OF ACTION ALLEGING DISCRIMINATION, HARASSMENT, AND RETALIATION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Plaintiff's causes of action alleging race discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981, and race and disability discrimination, harassment, and retaliation under the NYSHRL and the NYCHRL must be dismissed in their entirety pursuant to FRCP 12(b)(6) because she has failed to state a claim upon which relief can be granted as to each cause of action. As discussed above, in order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts adequate to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The factual allegations in the 282 paragraph Complaint, while lengthy, nevertheless fall far short of substantiating Plaintiff's causes of action. The Complaint consists entirely of factual allegations that are conclusory and neutral as to the Plaintiff's membership in a protected class or engagement in alleged protected activity. All of the allegations in the Complaint regarding alleged discrimination and retaliation require an inferential leap that is completely unsupported by the facts. The Complaint is glaringly devoid of concrete particulars relating to any discriminatory, harassing, or retaliatory conduct. Instead, the Complaint tells a long story of the Plaintiff's perception that the Defendant Firm did not support her marketing efforts, and the Plaintiff's perception that the Defendant Firm did not have the proper level of commitment to diversity and inclusion, despite the fact that the Complaint speaks at length about employee surveys and a Task Force in place at the Defendant Firm to address these very issues by the Plaintiff's own admission. Compl. ¶¶ 121–25, 130–33. Much of the factual allegations in the Complaint discuss the alleged treatment of other employees or twist certain facts in order to concoct a theory that the Defendants promoted a culture of discrimination.

22

Compl. ¶¶ 9, 108, 114, 125, 127, 223. The Plaintiff attempts to rely on the length of her factual diatribe as proof that she has met her pleading standard. However, despite Plaintiff's enumerable pages of self-serving and conclusory allegations about her employment at the Defendant Firm, none of them plead the requisite discriminatory animus and intent. Plaintiff also falls far short of pleading facts to show the requisite personal involvement and discriminatory intent of the Individual Defendants.

### A. Plaintiff Fails to State a Claim of Race Discrimination Upon Which Relief Can Be Granted

Plaintiff has failed to satisfy the pleading standards set forth in *Twombly* and *Iqbal* in asserting her race discrimination claims under § 1981 and the NYSHRL. To establish a prima facie case of discrimination under these statutory frameworks, a plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See id.* The Second Circuit requires that a plaintiff must provide "plausible facts to support a minimum inference of discriminatory motivation to survive a motion to dismiss. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Court must determine whether the plaintiff can satisfy her "ultimate burden of persuading the trier of fact that the defendant *intentionally discriminated* against the plaintiff." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citations omitted) (emphasis added); *Littlejohn*, 795 F.3d at 311. These standards require dismissal of Plaintiff's discrimination claims.

In evaluating circumstances in an employment discrimination action, courts should "consider whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999). "Courts must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, '[a]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact

exists on the basis of another fact [that is known to exist].'" *Id.* Plaintiff's allegations do not meet these standards because she fails to establish an inference of discriminatory intent by any of the Defendants.

The allegations asserted in support of the Plaintiff's discrimination claims can be placed into four buckets, each of which is unavailing. First, Plaintiff makes conclusory allegations that require an inferential leap that is not at all supported by any of the factual allegations in the Complaint that the Defendants engaged in discriminatory conduct or that she simply "felt" or "believed" or that "it appeared" that she had been subjected to discriminatory treatment. Examples of such allegations are:

- "It appeared obvious to Ms. Palmore that Mr. Napoli wanted her to be there just so there would be a Black woman at counsel's table." Compl. ¶ 100.

- "It is evident that the Firm had no intention of marketing an accomplished, African American female attorney as its face to the public." Compl. ¶ 103.

- "By this point, Ms. Palmore firmly believed that the Firm was exclusionary, lacked concern for issues of diversity and was unsupportive towards people of color. She felt that she was brought to the Firm to help create an appearance of diversity, even if it was not an issue of genuine importance to the senior Partners. Ms. Palmore also felt the Firm 'used her' as a 'token' African American when they felt it was in the Firm's interest." Compl. ¶ 104.

- "It is clear from the statement set forth above that the Firm engaged in and acquiesced racist conduct of its members, clients and co-counsel . . . employees were made to suffer harassing and/or discriminatory conduct in silence." Compl. ¶ 126.

The Plaintiff's assertions such as those above that permeate the Complaint are total generalities that lack any factual foundation, are completely conclusory, and are therefore insufficient to defeat a motion to dismiss. *See Jackson v. County of Rockland*, 450 Fed.Appx. 15, 19 (2d Cir. 2011). Moreover, Plaintiff's own subjective feelings, beliefs, and interpretations of what she perceives as racial discrimination are not sufficient to withstand a motion to dismiss. *See In re Schneorson*, 645 B.R. 146, 156 (E.D.N.Y. 2022) ("A court . . . need only accept as true those allegations that are truly factual allegations as opposed to allegations that are conclusory or *subjective characterizations*.") (emphasis added).

Second, Plaintiff goes on at length about the Defendants' failure to provide her marketing support or support staff, which is in part the gravamen of her Complaint. Compl. ¶¶ 44–82. All of these allegations are totally neutral and have no nexus to the Plaintiff's membership in any protected class. The Plaintiff's efforts to make an inferential leap that she was not provided with marketing support or support staff because of her race or disability are completely unsuccessful. Moreover, Plaintiff provides in the Complaint the very explanations she received from the Defendants as to why her marketing efforts or staffing requests were not implemented, and the proffered explanations clearly show that Plaintiff's alleged protected class membership played no role in the Defendants' responses to her proposals.

- "Ms. Palmore suggested hiring her former paralegal . . . Mr. Napoli responded to Ms. Palmore's suggestion with, 'but he's not Black.' . . . Ultimately, when Mr. Napoli denied Ms. Palmore's request to hire her former paralegal, he reasoned that it would 'mess up our salary cap.'" Compl. ¶¶ 45–47.

- ". . . Ms. Palmore requested to schedule a meeting with Mr. Napoli and Maria Hayashi (Director of Marketing) to discuss the Firm's marketing efforts . . . Mr. Napoli assured Ms. Palmore that they would set something up 'soon.' But Ms. Palmore had to repeatedly follow up as no proactive efforts were taken by the Firm to advance the marketing strategy." Compl. ¶ 51.

- ". . . Mr. Napoli directed Ms. Hayashi to look into advertising Ms. Palmore . . . Ms. Hayashi sent Ms. Palmore information regarding the different types of advertisements and pricing, but nothing further was done. When Ms. Palmore asked for follow-up meetings regarding marketing, she was ignored." Compl. ¶ 52.

- ". . . Ms. Palmore's struggle to get meaningful or timely responses continued as her requests were either ignored or met with evasive responses such as 'try for tomorrow please' . . . Ms. Palmore met with Ms. Hayashi, but all Ms. Hayashi was able to say about the marketing plan was, 'I'm working on it with Paul.' . . . Ms. Palmore was repeatedly rebuffed." Compl. ¶¶ 58–60.

- ". . . Ms. Palmore presented to Mr. Napoli an opportunity to corporate sponsorship of Alpha Kappa Alpha ('AKA'), the intercollegiate African American sorority . . . [t]he Firm declined to sponsor." Compl. ¶¶ 61–62.

- ". . . Ms. Palmore requested yet another meeting with Ms. Hayashi . . . Ms. Hayashi dismissed Ms. Palmore's concerns with, 'I'll discuss with Paul and get back.' But Ms. Hayashi did not get back to her." Compl. ¶ 63.

- ". . . Ms. Palmore suggested launching marketing efforts in New York City and Long Island and to target communities of color who are underrepresented . . . Marie Napoli responded, 'Yes, we will set up a call and talk it through.' But no meeting was ever initiated." Compl. ¶ 64.

- ". . . Ms. Palmore wrote to Mr. Napoli, Hunter Shkolnik, and Ms. Napoli, Craig Phemister (Associate) and Ms. Hayashi about connecting a correspondent on Law & Crime Network, MSNBC and Court TV . . . Ms. Napoli responded to Ms. Palmore that 'someone would circle back.' No one circled back." Compl. ¶¶ 65–67.

- ". . . Ms. Palmore approached Ms. Hayashi and asked if she had time to go over media pitches . . . Ms. Hayashi snapped at Ms. Palmore, stating, 'I don't have time for you, we will talk another day!'" Compl. ¶¶ 68–69.

- ". . . Ms. Palmore . . . proposed that the Firm should market her for potential clients in a mass tort case concerning defective earplugs supplied to members of the Armed Forces . . . Mr. Napoli responded, 'Omg I never thought of it, lets talk in the morning.' . . . instead of marketing Ms. Palmore, the Firm featured Hank Naughton, a white male Partner." Compl. ¶¶ 70–72.

- ". . . Ms. Palmore suggested the Firm look into starting a class action regarding the link between hair straightening products and an increased risk of cancer . . . Neither Mr. Napoli nor Ms. Napoli were enthused by the idea, but they offered to connect Ms. Palmore with someone in the Firm in Mass Torts/Class Actions area. However, they never did." Compl. ¶¶ 73–75.

- ". . . Ms. Palmore suggest[ed] marketing ideas to communities of color . . . Ms. Hayashi produced a document . . . the image on the document was clearly of white people . . . Ms. Hayashi sent another draft featuring people of a darker complexion . . . [i]n the end, no marketing ever took place." Compl. ¶¶ 76–77.

- ". . . Ms. Palmore noticed that opposing counsel on a case being handled at the Firm was a former boss . . . Ms. Palmore offer[ed] to use her connection to assist in settlement negotiations. Marie Napoli replied, 'leave the negotiations to [us].'" Compl. ¶ 78.

- ". . . Ms. Palmore suggested to Mr. Napoli that the Firm should add a Chief Diversity Officer . . . Mr. Napoli asserted that the title of Chief Diversity Officer 'would not help generate business' like her present title of Chief Trial Counsel." Compl. ¶¶ 105–06.

- ". . . Ms. Palmore . . . [was] not included on the Organizational Chart . . . Ms. Bohs, who ignored Ms. Palmore's email, responded to this attorney that Ms. Palmore was not on the Organizational Chart because she does not carry a case load nor have a case management team assigned to her." Compl. ¶¶ 108–14.

Importantly, *not a single one* of Plaintiff's allegations regarding the Defendants' responses to her marketing efforts and various proposals has even an attenuated connection to her race or her membership in any other protected class. Plaintiff's claims are founded on pure speculation and require an inference that is not supported by a single factual allegation. Plaintiff's subjective feelings regarding the Defendants' responses to her proposals do not constitute race discrimination. *Fraser v. MTA Long Island Rail Road*, 295 F.Supp.3d 230, 264 (E.D.N.Y. 2018), citing *Gronne v. Apple Bang for Sav.*, 98-CV-6091 (JS) (MLO), 2000 WL 298914, at *5 (E.D.N.Y. Feb. 14. 2000), *aff'd*, 1 Fed.Appx. 64 (2d Cir. 2001) (holding that hurt feelings do not constitute adverse employment actions, because then "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit") (citation omitted).

As stated above, Plaintiff includes in her Complaint the exact explanations she received from the Defendants as to why they chose not to execute on her proposed marketing strategies. The explanations provided in the Complaint constitute reasonable responses to Plaintiff's requests and, critically, have *nothing* to do with her membership in any protected class and convey not a modicum of discriminatory animus or bias. The fact that each of the Defendants' explanations clearly do not evidence any discriminatory animus is just another obvious sign of the lengths to which Plaintiff must go to concoct an unsupported and rambling theory of discriminatory animus. Plaintiff also makes a wholly irrelevant series of factual allegations regarding a case that she took to trial and lost, without making a single connection or even a vague reference to her membership in a protected class. Compl. ¶¶ 53–57.

Plaintiff also attempts to allege that she was the victim of discriminatory treatment with respect to the Defendant Firm's Task Force and employee survey. Compl. ¶¶ 116–35. However, again, none of the allegations on this topic support her claims. Plaintiff first alleges that she suggested that certain questions in the employee survey be revised, but her suggestion was not implemented into the final version of the questionnaire. Compl. ¶¶ 117–18. Plaintiff claims that she asked to join the Defendant Firm's Task Force to discuss the results of the employee survey. Compl. ¶ 122. Plaintiff was permitted to join the Task Force.

Compl. ¶ 123. Plaintiff goes on to allege that she requested survey results from previous years, and that the results were provided to her. Compl. ¶¶ 130-32. Plaintiff claims that Gloria Werle told her that she had not experienced discrimination at the Defendant Firm. Compl. ¶ 134.

Like Plaintiff's allegations regarding her marketing and business development proposals, these rambling factual allegations regarding the Defendant Firm's Task Force and employee survey have no connection to Plaintiff's membership in any protected class. Moreover, these factual allegations bely the overarching theme Plaintiff attempts to allege in her Complaint that the Defendants fostered a culture of discrimination and were not sufficiently committed to diversity and inclusion. Instead, these factual allegations show that the Defendants were committed to diversity and anti-discrimination and anti-harassment initiatives and were making efforts to foster the same in their workplace, and that Plaintiff was included as a part of that effort.

Third, Plaintiff attempts to meet her pleading requirement by asserting factual allegations that *other* employees of the Defendant Firm allegedly were subjected to discrimination:

- ". . . [Ms. Palmore] is just one of several employees who have recently reported discrimination towards themselves and others . . . [A] female attorney filed an action against [Paul Napoli], [Marie Napoli], and their former firm . . . As another example, a former employee of Mr. Napoli's and his prior Firm . . . filed a wrongful termination action." Compl. ¶¶ 8–9.

- ". . . Chun Ho Chung (Partner) was also incorrectly listed under the 'Translation Team.'" Compl. ¶ 108.

- ". . . Notably, an anonymous employee response to the Survey stated . . . [i]t is clear from the statement set forth above that the Firm engaged in and acquiesced racist conduct of its members, clients and co-counsel . . . [e]ssentially, employees were made to suffer harassing and/or discriminatory conduct in silence." Compl. ¶¶ 125–26.

- ". . . An associate told Ms. Palmore that a client told her she did not want a woman as her attorney . . . Mr. Badala ultimately told the Firm to disengage that client." Compl. ¶¶ 127–49.

Plaintiff also makes an amorphous allegation that she only recently learned about a discussion between unnamed employees of the Defendant Firm regarding a client's hairstyle. Compl. ¶¶ 221–23. By her own admission, Plaintiff did not hear or witness this interaction and she does not identify anyone from the Defendant Firm who was involved in the discussion. This is yet another example of the type of vague allegations lacking in concrete specifics that are littered throughout the Plaintiff's Complaint that do not succeed in supporting her claims.

None of the above-referenced allegations are sufficient to establish discriminatory animus. "[I]ndividual private plaintiffs must prove that they were, *individually*, the victims of intentional discrimination. Extending the 'pattern or practice' method of proof to the non-class action context would . . . 'allow non-class private plaintiffs who have shown a pattern or practice of discrimination . . . to shift the burden to employers to prove that they did not discriminate against a particular individual.'" *Simmons Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F.Supp.2d 498, 505 (S.D.N.Y. 2013) (citation omitted) (emphasis added); *see also Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012), quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

Fourth, Plaintiff also attempts but fails to establish an inference of racial discrimination based on disparate treatment. Compl. ¶¶ 44–83. A plaintiff asserting a disparate treatment claim must show that she was *similarly situated in all material respects* to the individuals with whom she must compare herself. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (emphasis added). In order to show that a fellow employee is similarly situated to her, the Plaintiff must show that she and the comparator were similarly situated in terms of such things as education, experience, background, qualifications, seniority, performance, and specific work duties. *See Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F.Supp.2d 377, 384–85 (S.D.N.Y. 2002). The similarly situated employee must have also "engaged in conduct similar to plaintiff's." *Hagan v. City of New York*, 39 F.Supp.3d 481, 497 (S.D.N.Y. 2014). Additionally, to establish a disparate treatment

claim, "[i]t is not enough to show, at the bottom line, that there is racial imbalance in the workforce." *Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 159–60 (2d Cir. 1991), citing *Ward's Cove Packaging Co. v. Atonio*, 490 U.S. 642 (1989).

The Plaintiff completely and fatally fails to meet the requisite pleading standard for her disparate treatment claim because she fails to identify any comparators, and therefore fails to allege how any other employee(s) are similar to her in all material respects or engaged in conduct similar to hers. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 698 (S.D.N.Y. 2011). Furthermore, Plaintiff's general, vague, and conclusory allegations regarding her subjective perceptions of diversity (or lack thereof) at the Defendant Firm are not sufficient to establish disparate treatment. *See Lopez*, 930 F.2d at 159–60; Compl. ¶¶ 7, 42, 64, 104.

Plaintiff has not plead facts to show an inference of discrimination, and she has failed to make out a prima facie case of race discrimination under any of her alleged theories. Accordingly, Plaintiff's first and third Causes of Action must be dismissed with prejudice as to all Defendants.

**1. Plaintiff Fails to State a Claim of Disability Discrimination Upon Which Relief Can Be Granted**

The merits of Plaintiff's disability discrimination claim under the NYSHRL are analyzed through the prism of the Americans with Disabilities Act. *Gorman v. Covidien, LLC*, 146 F.Supp.3d 509, 527–28 (S.D.N.Y. 2015). To establish a prima facie case of disability discrimination, Plaintiff must show that (1) she is a person with a disability under the meaning of the NYSHRL; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of her job; and (4) she suffered an adverse employment action because of her disability. *Fernandez v. Windmill Dist. Co.*, 159 F.Supp.3d 351, 366 (S.D.N.Y. 2016).

Plaintiff's claim of disability discrimination is even weaker than her race discrimination claim. It is notable that in a Complaint containing 282 paragraphs of factual allegations, only approximately nine (9)

paragraphs pertain to the Plaintiff's 'serious health condition' at all. Compl. ¶¶ 240–44, 246, 249–50, 252. These allegations are duplicative and also form the basis of her FMLA interference and retaliation claims. Notably, the word 'disability' is never mentioned in these allegations. This is because the Plaintiff does not allege that she ever notified her employer that she had a disability or was disabled, because she did not do so. The Complaint only refers to an amorphous 'serious health condition.' Compl. ¶¶ 240–41, 244, 246, 249. Thus, the Plaintiff has failed to sufficiently plead that she suffered from a qualifying disability. The Defendants were never made aware that the Plaintiff claimed to have a disability, or that she was disabled. Plaintiff did not even make mention of her alleged serious health condition until February 2023, at the end of her employment. As a result, none of the Defendants ever regarded the Plaintiff as having a disability, and indeed the Plaintiff does not allege otherwise. It is axiomatic that the Defendants could not have intentionally discriminated against the Plaintiff based upon an alleged disability they were unaware of.

 The Plaintiff completely fails to make the requisite showing, or even plead any allegations for that matter, that she is a person with a disability under the meaning of the relevant statute, that the Defendant Firm was an employer covered by the statute, that the Plaintiff made the Defendant Firm aware that she had a disability, that she could perform the essential functions of her job with a reasonable accommodation, and/or that the Defendant Firm refused to make such an accommodation. Moreover, Plaintiff concedes in the Complaint that the Defendants *granted* her requested medical leave of absence. Compl. ¶ 247. Plaintiff fails to plead any specific, concrete facts alleging how the Defendants refused to accommodate her health needs. Instead, she makes a conclusory allegation that the Defendants "refused to accommodate her health needs" without further detail, notwithstanding the fact that the Defendants granted her medical leave. Compl. ¶¶ 247, 250.

The Complaint does not contain a single allegation in which Plaintiff alleges that she was subjected to discriminatory comments or conduct based on her alleged disability or that she suffered an adverse employment action *because of* her disability. Instead, like her race discrimination claim, Plaintiff's disability

discrimination claim rests only upon inferences and pure conjecture that is insufficient to establish a viable claim. Accordingly, Plaintiff's third and fifth causes of action must be dismissed with prejudice as to the Defendants.

**B. Plaintiff Fails to State a Claim of Harassment/Hostile Work Environment Upon Which Relief Can Be Granted**

The Plaintiff's harassment/hostile work environment claims pursuant to § 1981 and the NYSHRL are evaluated using the same standard. *Love v. Premier Utility Services LLC*, 186 F.Supp.3d 248, 251, 256 (E.D.N.Y. 2016). To establish discrimination based on harassment/hostile work environment, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000). A hostile work environment claim is established when the incidents of alleged harassment occur either in concert or with a regularity that can reasonably be termed pervasive. *Id.* Incidents that are few in number and that occur over a short period of time do not demonstrate a hostile work environment. *Id.* (citations omitted). "[T]here must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Alleged comments that have no connection to a plaintiff's membership in a protected class are not sufficient to establish a claim of harassment/hostile work environment. *See Jenkins v. Arcade Bldg. Maintenance*, 44 F.Supp.2d 524, 528–29 (S.D.N.Y. 1999).

Plaintiff has failed to state a claim for harassment/hostile work environment upon which relief may be granted. There is not a single specific instance of harassment based on Plaintiff's membership in a protected class that is alleged in the Complaint. Instead, Plaintiff alleges only petty slights and trivial inconveniences which have no connection to her membership in any protected class, in an attempt to establish that she was subjected to harassment. For example, she alleges that Mr. Napoli subjected her to an "onslaught of harassment" by (1) requesting that she provide notes from meetings she attended; (2) asking

her to submit medical documentation in support of her requested FMLA leave of absence consistent with the Defendant Firm's policies; (3) asking her for information related to prospective clients; and (4) raising his voice. Compl. ¶¶ 139, 177, 237, 238, 242. Plaintiff also claims that Mr. Shkolnik exhibited a "level of anger" that was "blatant" when she asked for a meeting agenda because he referred to her "request" as a "demand," but Plaintiff fails to specify how Mr. Shkolnik's alleged "anger" was "blatant." Compl. ¶ 163. Plaintiff's claims of harassment/hostile work environment have no nexus to her membership in a protected class. Instead, Plaintiff simply concludes that even the most innocuous interaction(s) she had with her coworkers constitutes harassment/hostile work environment. Compl. ¶¶ 7, 69, 95, 97, 139, 147–48, 163, 177. For example, she claims that Mr. Napoli exhibited a "blatant show of animus" when he made the innocuous statement that, "[I]t is not my job to chase you" with regard to scheduling a time to complete her annual review.  Compl. ¶ 177. She also claims that her lack of remote access to the Defendant Firm's network was a "further attempt to harass" her. Compl. ¶ 244.

None of these allegations constitute severe or pervasive conduct sufficient to rise to the level of a hostile work environment. *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 08-CV-7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding that "exclu[sion] from staff meetings," "deliberate avoid[ance]," yell[ing] and talk[ing] down to" was not enough to show that defendant's conduct was sufficiently severe or pervasive), *aff'd*, 488 Fed.Appx. 530 (2d Cir. 2012); *Heba v. New York State Division of Parole*, 537 F.Supp.2d 457, 468 (E.D.N.Y. 2007) (supervisor's angry outbursts and use of profanity did not constitute environment of pervasive hostile and abuse). "Personal animosity is not the equivalent of . . . discrimination . . . plaintiff cannot turn a personal feud into a . . . discrimination case by accusation." *Gibson v. Brown*, 1999 WL 1129052, at *12 (E.D.N.Y. Oct. 19, 1999). Plaintiff's claims of harassment/hostile work environment are not supported by the facts pled in the Complaint, which clearly lack any connection to her protected class membership and are not sufficiently severe or pervasive to create an abusive working environment.

Plaintiff claims that one instance of harassment/hostile work environment was when she saw a stuffed bear hanging from a "noose" on a light fixture over a common area in view of the Plaintiff's office, which she asserts is an example of "egregious discriminatory conduct." Compl. ¶¶ 5, 84–88. Plaintiff alleges that shortly after she brought this matter to the attention of human resources and accounting department employees, the bear was gone. Compl. ¶¶ 86–87. Nonetheless, Plaintiff baselessly implies that the Defendants were not concerned by the racial trope the Plaintiff attributes to the hanging stuffed bear. Compl. ¶ 88. Beyond the alleged physical proximity of the bear to Plaintiff's office, there are no allegations in the Complaint that assert or even suggest that the bear was hung in an act of intentional discrimination directed at the Plaintiff. Plaintiff does not allege any conduct wherein anyone at the workplace directed the bear to the Plaintiff's attention or suggested that its presence had anything to do with her at all. Plaintiff simply calls for an inference of discriminatory harassment based only on the fact that a bear was hung near her office and that she happened to see it.

In fact, the evidence will show that the stuffed bear was not hung by any of the Defendant Firm's employees, that none of the Defendants had any knowledge that the bear was hung, and that the bear was not displayed as a racial trope, but instead was the mascot of a defendant corporation against whom the attorneys who placed the bear (who were not employees of the Defendant Firm) were litigating. The bear had absolutely no connection to the Plaintiff or her membership in any protected class. Nevertheless, at this stage, looking to the allegations in the Complaint as the Court must, the allegations regarding the stuffed bear do not rise to the level of creating a hostile work environment.

Plaintiff further asserts that Mr. Napoli introduced her to his colleagues and friends as the "Black female Ben Crump." Compl. ¶ 90.[6] This single alleged comment falls far short of even coming close to establishing a hostile work environment. *Heba*, 537 F.Supp.2d at 468. On its face, it is clear that this single

---

[6] Paul Napoli denies referencing the Plaintiff's race.

alleged comment is meant to be a compliment to the Plaintiff, in reference to the reputation of African American Attorney Ben Crump as a successful trial lawyer, and not an attempt to "reduce her to her race and gender." Compl. ¶ 91. The Plaintiff acknowledges in her Complaint that Ben Crump was a mutual friend of hers and Paul Napoli's which is how she was introduced to Mr. Napoli. Compl. ¶ 29. Regardless of how Plaintiff tries to twist the meaning or implication of this alleged comment, it is plainly not derogatory and does not convey any discriminatory animus.

Accordingly, Plaintiff has failed to plead facts that support her claims that she was subjected to harassment/hostile work environment, and, as such, the first and third Causes of Action must be dismissed with prejudice as to all Defendants.

### C. Plaintiff Fails to State a Claim of Retaliation Upon Which Relief Can Be Granted

To establish a prima facie retaliation claim under § 1981 and the NYSHRL, a plaintiff must show by a preponderance of the evidence that (1) she engaged in a protected activity; (2) the defendant knew of the protected activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

The Plaintiff alleges that she was retaliated against after she complained of discrimination in September 2022. Compl. ¶ 170. Plaintiff pleads wholly conclusory allegations that she was retaliated against in various ways. First, she alleges that she was intentionally ignored in meetings and that she had to "beg" to try a case. Compl. ¶¶ 157–60. Plaintiff concludes that she was intentionally ignored in meetings but provides no details to support this allegation, such as identifying specific meetings in which she allegedly was ignored and who allegedly ignored her. She also fails to plead any comments or conduct connecting her allegedly being ignored to her engagement in protected activity. With respect to her claim of having to "beg" to try a case, Plaintiff again concedes that Mr. Napoli certainly has the authority to decide who will try a case,

which plainly shows that there was no retaliatory intent or causal connection between Plaintiff's alleged engagement in protected activity and whether or not she would try a case. Compl. ¶ 159.

Plaintiff further alleges that the Defendants retaliated against her by sending an email to the entire Defendant Firm notifying its employees of its email policy. Compl. ¶ 174. Like her other allegations of retaliation, Plaintiff's claim that an email sent to the Defendant Firm's employees in an effort to protect confidential client and firm information was somehow retaliatory is purely speculative and requires an inference that is not supported by a single factual allegation beyond the fact that the email allegedly was sent approximately one month after she engaged in protected activity. *See Mandavia v. Columbia Univ.*, 912 F.Supp.2d 119, 133 (S.D.N.Y. 2012) ("'Post hoc, ergo propter hoc' is a logical fallacy that has never been the law of this Circuit."). Plaintiff also alleges that the Defendants retaliated against her by changing the title underneath her name on the Defendant Firm's website. Compl. ¶¶ 190–92. Plaintiff contends that the change of her title on the website from "Chief Trial Counsel" to "Of Counsel/Chief Trial Counsel" somehow "[made] it clear to the public that she is not a Partner." Compl. ¶ 191. Not only is it unclear how such a change of Plaintiff's title could signify that she was "not a Partner," but Plaintiff also fails to plead any factual allegations supporting her claim that such a change was somehow related to her engagement in protected activity beyond the timing of the alleged change, which is insufficient, standing alone, to establish a valid retaliation claim. *See Gomez v. New York City Dept. of Educ.*, 21-CV-01711 (AT) (SN), 2022 WL 4298728, at *2 (S.D.N.Y. Sept. 19, 2022) (holding that temporal proximity between complaint and alleged adverse employment action, alone, is insufficient to establish causal connection for purposes of retaliation claim).

Plaintiff asserts that after she allegedly engaged in protected activity, she received negative feedback in her annual performance review in retaliation for her complaints. Compl. ¶¶ 161–69. Plaintiff further contends that the Defendants retaliated against her by reducing her salary an unspecified amount because she had failed to meet expectations. Compl. ¶ 167. Such actions cannot form the basis of Plaintiff's retaliation claim. The discussions regarding Plaintiff's job performance and salary were in connection with her annual

performance review by her own admission. Compl. ¶ 163. While Plaintiff alleges that she engaged in protected activity prior to her annual performance review, there are no factual allegations in which she asserts that the Defendants referenced her complaints when they discussed her performance or salary. Instead, Plaintiff's claim that this conduct was somehow retaliatory constitutes yet another theory of alleged retaliation that is not supported by any concrete facts or specific details.

Plaintiff repeatedly alleges that she experienced issues with connecting to the Defendant Firm's server while she worked remotely, and that her technological difficulties were the result of a deliberate effort to retaliate against her. Compl. ¶¶ 172–73, 198–00, 203–05, 218–20. Despite her own conclusory allegations that her connectivity issues were retaliatory, Plaintiff fails to plead any factual allegations supporting her claim. Instead, she relies on the mere fact that her alleged engagement in protected activity was followed in time by her connectivity issues. Plaintiff cannot maintain a retaliation claim premised only on temporal proximity without a single supporting factual allegation showing a causal connection between the protected activity and the alleged retaliatory conduct. *See Dechberry v. N.Y.C. Fire Dep't*, 124 F.Supp.3d 131, 154 (E.D.N.Y. 2015) ("Simply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss."). Plaintiff relies on further conjecture in attempting to shore up her retaliation claim, alleging that a riddle was written on a whiteboard in the office referencing a lawsuit, and that she was not on an email distribution list in retaliation for her alleged protected activity. Compl. ¶¶ 208–11, 215–17, 224–26. Again, Plaintiff pleads no factual allegations which bring either of these alleged retaliatory actions beyond mere inference. Purely speculative allegations such as these cannot form the basis of a retaliation claim.[7]

---

[7] Plaintiff also devotes a substantial part of her Complaint to factual allegations regarding (1) a private, pre-suit mediation the parties attended in a mutual effort to resolve her claims; and (2) her responses to allegations brought against her in state court by the Defendant Firm. Plaintiff's claims regarding the pre-suit mediation evince no retaliatory conduct. Instead, those efforts were plainly in furtherance of the Parties' mutual goal of a possible pre-suit resolution. Plaintiff's claims regarding the state court litigation appear to be responsive to the claims brought in that matter, contain no inference of retaliation, and have no bearing on her claims alleged in this litigation. Compl. ¶¶ 228–34, 251–78.

Plaintiff's retaliation claim fails because she has not pled facts to suggest any causal connection between her alleged engagement in protected activity and any alleged adverse employment actions. Plaintiff offers little more than a highly speculative argument that because she made unsubstantiated complaints of discrimination prior to the termination of her employment, the Court must infer a retaliatory motive. Plaintiff's attempt to shore up her retaliation claim based on temporal proximity, alone, fails. *Id.* Plaintiff has presented no specific facts to support a causal connection between her alleged engagement in protected activity and an alleged adverse employment action. Instead, she merely alleges a litany of innocuous interactions that took place after she allegedly engaged in protected activity in an attempt to paint a picture of retaliatory animus. Furthermore, the five-month gap in time between Plaintiff's alleged complaint of discrimination in September 2022 and the termination of her employment in February 2023 is too attenuated to create an inference of a causal connection sufficient to support her retaliation claim. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (holding that there was insufficient evidence of a causal nexus when the only evidence was temporal and there was a three-and-a-half-month lapse between the complaint and the alleged adverse employment action).

Accordingly, Plaintiff has failed to plead facts that support her claims that she was retaliated against and, as such, the second and fourth Causes of Action must be dismissed with prejudice as to all Defendants.

**D.  Even if Plaintiff Could Avail Herself of the NYCHRL, Her Claims of Discrimination, Hostile Work Environment, and Retaliation Nonetheless Fail**

As discussed above, Plaintiff cannot bring any of her claims under the New York City Human Rights Law (the "NYCHRL") because she has not and cannot allege the requisite connection between the conduct alleged in the Complaint and New York City. (*See* Point III, *supra*). Even assuming, *arguendo*, that Plaintiff could bring her claims under the NYCHRL, she nonetheless has failed to establish any of her claims even under the NYCHRL's more relaxed pleading standard.

To establish her claim of race and disability discrimination, Plaintiff must establish that she was "treated less well than other employees" because of her membership in a protected class and because of a "discriminatory intent." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dept. 2009); *Mihalik v. Credit Agricole Chuvreaux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Baluch v. 300 West 22 Realty, LLC*, 21-CV-9747 (JPO), 2023 WL 112547, at *6 (S.D.N.Y. Jan. 5, 2023). Plaintiff cannot rely on "purely conclusory allegations of discrimination, absent any concrete particulars" to establish her claims of race or disability discrimination under the NYCHRL. *Moccio v. Cornell Univ.*, 759 F.2d 989, 998 (2d Cir. 1985), *cert denied*, 474 U.S. 829 (1985). "The NYCHRL is not a general civility code . . . [t]he Plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110 (citations omitted).

As discussed above, Plaintiff has failed to plead that she was treated less well than other employees because of her race or disability. Plaintiff has not pled any specific, concrete particulars pertaining to any direct or indirect alleged discriminatory comments or conduct to which she was subjected, and the Complaint is completely bereft of any factual allegations evidencing discriminatory intent by any of the Defendants. (*See* Point VI.A, *supra*). Because Plaintiff has failed to plead that she was treated less well because of a discriminatory motive based on her race or disability, her discrimination claim under the NYCHRL must be dismissed.

Likewise, Plaintiff cannot establish that she was subjected to a hostile work environment under the NYCHRL. While a plaintiff need not demonstrate that the alleged conduct was "severe or pervasive" to establish a hostile work environment, she must still allege that she was treated less well than other employees *because of* a protected characteristic. *Gonzalez v. City of New York*, 377 F.Supp.3d 273, 302 (S.D.N.Y. 2019). Even under the NYCHRL, "petty, slight, or trivial inconveniences are not actionable." *Bermudez v. City of New York*, 783 F.Supp.2d 560, 579 (S.D.N.Y. 2011). Plaintiff fails to plead sufficient facts demonstrating that she was subjected to a hostile work environment *because of* her race or disability, and her claims do not

come close to rising beyond the level of petty, slight, or trivial inconveniences. (*See* Point VI.B, *supra*). Therefore, even if Plaintiff could bring her hostile work environment claim under the NYCHRL, it nonetheless fails as a matter of law.

Plaintiff's retaliation claim under the NYCHRL also fails as a matter of law. To prevail on a NYCHRL retaliation claim, a plaintiff must show: (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she suffered an action that would be reasonably likely to deter a person from engaging in a protected activity; and (4) that there was a causal connection between the protected activity and the action. *Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F.Supp.2d 462, 469 (S.D.N.Y. 2009). Plaintiff cannot establish that she suffered an action that would be reasonably likely to deter a person from engaging in a protected activity or that there was a causal connection between the protected activity and the action. As discussed above, Plaintiff has failed to plead any specific facts evidencing any retaliatory conduct to which she was subjected. Instead, her claim rests upon an inference that is not supported by the facts plead in the Complaint. *See* Point 6.C., *supra*.

## POINT VII

### ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED BECAUSE THE PLAINTIFF HAS FAILED TO PLEAD THE NECESSARY PERSONAL INVOLVEMENT AND INTENT

As a threshold matter, the Plaintiff has wrongfully asserted claims of aiding and abetting discrimination under § 1981 because no such claim exists. *Raghavendra v. N.L.R.B.*, 08-CIV-8120 (PAC) (HBP), 2009 WL 5908013, at *21–22 (S.D.N.Y. Aug, 27, 2009) (holding that there is no claim for aiding and abetting a violation of § 1981 because there is no indication that Congress intended to create civil aiding and abetting liability for such violations). To the extent that the Plaintiff has also alleged claims of individual liability under § 1981, she must "demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . [Personal] liability under section 1981 must be predicated on the actor's personal involvement." *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). A plaintiff must also prove

that alleged discrimination under § 1981 was intentional. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118 (2d Cir. 2004).

Individual liability under the NYSHRL also requires personal involvement. An individual may be held personally liable under the NYSHRL if they "participate in the conduct giving rise to a claim." *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F.Supp.2d 477, 490 (S.D.N.Y. 1990); *see Maney v. Coming, Inc.*, 547 F.Supp.2d 221, 233 (W.D.N.Y. 2007) (finding that individual liability may be appropriate where the individual encourages, condones, or approves of alleged misconduct). The NYSHRL also conveys individual liability on any person who aids and abets the doing of any acts forbidden by the law. *See* N.Y. Exec. Law § 296(6). "Aiding and abetting liability requires that the aider and abetter 'share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.'" *Robles v. Goddard Riverside Community Center*, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009). Consequently, "to find that a defendant actually participated in the discriminatory conduct requires a showing of 'direct, purposeful, participation.'" *Id.* Additionally, aiding and abetting liability under the NYSHRL may be found only where a primary violation has been established. *Mazyck v. Metro. Transp. Auth.*, 893 F.Supp.2d 574, 597 (S.D.N.Y. 2012).

Similarly, individuals may be held liable under the NYCHRL if they "actually participated in the conduct giving rise to the discrimination claim." *Feingold v. New Yok*, 366 F.3d 138, 157 (2d Cir. 2004) ("The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical.") (citations omitted). Like the NYSHRL, aiding and abetting liability under the NYCHRL may be found only where a primary violation has been established. *McHenry v. Fox News Network, LLC*, 510 F.Supp.3d 51, 73 (S.D.N.Y. 2020).

As discussed below, Plaintiff has failed to state claims of culpable individual participation and/or aiding and abetting upon which relief can be granted against each of the Individual Defendants.

41

### A. Hunter Shkolnik

Plaintiff has failed to allege that Individual Defendant Hunter Shkolnik engaged in conduct or had the requisite discriminatory intent to be individually liable to her under the relevant statutes. The following is a list of Plaintiff's allegations against Mr. Shkolnik:

- "On February 10, 2022, Ms. Palmore wrote to . . . Mr. Shkolnik . . . about connecting a correspondent on Law & Crime Network, MSNBC, and Court TV . . . no one circled back." Compl. ¶¶ 65–67.

- ". . . [I]n mid-February 2021, Ms. Palmore travelled to San Juan, Puerto Rico . . . Mr. Shkolnik and his wife were nearby . . ." Compl. ¶ 89.

- "In July 2022, Ms. Palmore was requested by Mr. Shkolnik to shoot two commercials for the Firm . . . Ms. Palmore shot the commercials for two full days because Mr. Shkolnik requested a change to the script . . . the Firm decided to shoot and air the same commercial with two paid Caucasian actors." Compl. ¶¶ 101–02.

- ". . . Ms. Palmore requested an agenda for the meeting . . . Mr. Shkolnik called her reasonable requests 'demands' . . . the level of anger coming from Mr. Shkolnik was blatant." Compl. ¶¶ 161–63.

- ". . . Ms. Palmore attended the Teams meeting with Mr. Napoli and Mr. Shkolnik and was told for the first time ever that there were supposed problems with her work." Compl. ¶ 164.

- "Mr. Shkolnik has witnessed firsthand Ms. Palmore's reference to the Palmore Law Group on her social media profile . . . Mr. Shkolnik never once raised the reference to the Palmore Law Group as an issue to Ms. Palmore . . . Mr. Shkolnik [] commented on posts of Ms. Palmore on a social media profile." Compl. ¶¶ 262–64.

Plaintiff's allegations that involve Mr. Shkolnik are scant and none of them come close to establishing that Mr. Shkolnik "share[d] the intent or purpose" of allegedly discriminating, harassing or retaliating against her. *Robles*, 2009 WL 1704627, at *3. Instead, Plaintiff's allegations that involve Mr. Shkolnik merely recount various trivial interactions she had with him during her employment, and not a single one has even an attenuated connection to her protected membership status or to her alleged engagement in any protected activity. *See Gibson v. Brown*, 1999 WL 1129052, at *12 (E.D.N.Y. Oct. 19, 1999). Moreover, as discussed herein, the Plaintiff has failed to establish a primary violation of the NYSHRL or the NYCHRL against any of

the Defendants. Therefore, Mr. Shkolnik could not have aided and abetted any such alleged conduct. (*See* Point VI, *supra*).

Accordingly, Mr. Shkolnik cannot be found liable to Plaintiff in his individual capacity under § 1981, the NYSHRL, or the NYCHRL for participating in and/or aiding and abetting in alleged discrimination, harassment, and retaliation. Thus, Causes of Action one through nine should be dismissed with prejudice against Defendant Shkolnik.

### B.  <u>Marie Napoli</u>

Plaintiff makes no allegations and proffers no evidence that Individual Defendant Marie Napoli directly and/or personally engaged in, or aided and abetted, any discriminatory, harassing, or retaliatory conduct against her.

The following are the Plaintiff's allegations against Ms. Napoli:

- "Ms. Palmore tried the case, which unfortunately resulted in a defense verdict . . . Marie Napoli [] wrote, 'Next case. It was tough, but you will get them next time!'" Compl. ¶ 57.

- ". . . Ms. Palmore sent an email to Ms. Napoli . . . suggest[ing] launching marketing efforts . . . Marie Napoli responded, 'Yes, we will set up a call and talk it through.' But no meeting was ever initiated." Compl. ¶ 64.

- "On February 10, 2022, Ms. Palmore wrote to . . . Ms Napoli . . . about connecting a correspondent on Law & Crime Network, MSNBC, and Court TV . . . Ms. Napoli responded to Ms. Palmore that 'someone would circle back.' No one circled back." Compl. ¶¶ 65–67.

- ". . . Ms. Palmore suggested the Firm look into starting a class action regarding the link between hair straightening products and an increased risk of cancer . . . Ms. Napoli [was not] enthused by the idea, but [she] offered to connect Ms. Palmore with someone in the Firm . . . However, [she] never did." Compl. ¶¶ 73–75.

- ". . . Ms. Palmore wrote to Ms. Napoli and others staffed on the case, offering to use her connection to assist in settlement negotiations. Marie Napoli replied, 'leave the negotiations to [us].'" Compl. ¶ 78.

- ". . . [I]n mid-February 2021, Ms. Palmore travelled to San Juan, Puerto Rico . . . Ms. Napoli . . . [was] nearby . . ." Compl. ¶ 89.

- "... Ms. Palmore also emailed Mr. Napoli and Ms. Napoli to inquire the same ... [n]o one responded to Ms. Palmore's inquiries." Compl. ¶¶ 110–11.

- "... Ms. Napoli ... said, 'it's just the business' and 'half our clients are difficult.' ... the female associate had to 'deal with it.'" Compl. ¶ 129.

- "... Ms. Napoli arrived at the Melville office ... [she] did not apprise anyone of [her] visit ... the same day Mr. Napoli and Ms. Napoli arrive at the Melville office, the sentiment that no one wants to lose a lawsuit was posted for everyone at the Melville office to see." Compl. ¶¶ 206–11

- "... Ms. Napoli ... [has] commented on posts of Ms. Palmore on a social media profile ..." Compl. ¶ 264.

Plaintiff claims only that she and Ms. Napoli had innocuous interactions regarding work matters during her employment. Compl. ¶¶ 64, 67, 75, 78–79, 129. Plaintiff does not allege that Ms. Napoli took any action against her or that she had any involvement with any decision concerning Plaintiff. The alleged interactions with and conduct involving Ms. Napoli have no connection to Plaintiff's membership in any protected class or her alleged engagement in any protected activity, and Plaintiff has failed to allege that Ms. Napoli "actually participated in the conduct" that gives rise to any of Plaintiff's claims. *See Malena v. Victoria's Secret Direct, LLC*, 886 F.Supp.2d 349, 367 (S.D.N.Y. 2012). Moreover, as discussed herein, the Plaintiff has failed to establish a primary violation of the NYSHRL or the NYCHRL against any of the Defendants. Therefore, Ms. Napoli could not have aided and abetted any such alleged conduct. (*See* Point VI, *supra*).

Accordingly, Ms. Napoli cannot be found liable to Plaintiff in her individual capacity under § 1981, the NYSHRL, or the NYCHRL for participating in and/or aiding and abetting in the alleged discrimination, harassment, and retaliation. Thus, Causes of Action one through nine should be dismissed with prejudice against Ms. Napoli.

### C. Paul Napoli

Plaintiff pleads a litany of factual allegations against Mr. Napoli, however, as pled, none of the allegations establish intentional discrimination because they do not bear any relationship or reference to

Plaintiff's protected class membership or engaging in any protected activity. Instead, the Plaintiff alleges that in response to her complaints of discrimination, Mr. Napoli told her that the Defendant Firm made her complaints a priority and that it would perform an investigation:

- ". . . after he had already berated Ms. Palmore for her concerns earlier, Mr. Napoli responded to her email falsely stating that the Firm takes the issues she has 'seriously' and assigns them a 'major priority.'" Compl. ¶ 140.

- ". . . [Mr. Napoli] asserted the position that 'Our firm has a long history of championing these causes that defy these allegations . . .'" Compl. ¶ 182.

- ". . . [W]hen you raised your 'concerns, [the Firm] immediately hired an independent investigator, conducted interviews and promptly disposed of the allegations.'" Compl. ¶ 184.

Plaintiff concedes that Mr. Napoli notified her that the Defendants were taking her concerns seriously, making them a priority, and engaging an investigator. However, Plaintiff somehow goes on to make conclusory allegations that his statements were actually false, without any concrete supporting factual allegations.

The Plaintiff also recounts various interactions and discussions she had with Mr. Napoli that have no relevance whatsoever to any of her claims and do not evidence any discriminatory, retaliatory, or harassing conduct, for example:

- "Ms. Palmore had offered to assist on these matters until they hired additional litigation staff . . . Mr. Napoli completed disregarded Ms. Palmore's concerns and responded, 'You can do all three! I got to go.'" Compl. ¶ 81.

- "Mr. Napoli responded that he has a right to 'think through who he wants to try cases,' although Ms. Palmore is Chief Trial Counsel for the Firm." Compl. ¶ 159.

- ". . . Mr. Napoli circulated an email to the entire Firm [regarding the Firm's email forwarding policy]." Compl. ¶ 174.

- ". . . [Mr. Napoli] used his 'distant' geographical location as basis to invalidate her feelings." Compl. ¶ 207.

- ". . . [Mr. Napoli asked] if she ran a conflicts check, ask[ed] if she ran the facts by the partners, and refer[ed] to 'potential intakes.'" Compl. ¶ 238.

45

- "Mr. Napoli . . . wrote, 'it is the policy and practice of the firm to require supporting medical documentation when someone calls out multiple days in a row because of a medical condition. We require that you provide medical documentation.'" Compl. ¶ 242.

The Plaintiff's allegations regarding Mr. Napoli are purely speculative and do not evidence any direct, intentional participation in any discriminatory, retaliatory, or harassing conduct. Rather, Plaintiff's claims relating to Mr. Napoli are neutral as to her membership in any protected classes, or her participation in any protected activity. Plaintiff twists Mr. Napoli's legitimate questions and directions to her in an attempt to fit her narrative that they were somehow actually discriminatory or retaliatory. However, Plaintiff's attempts are not successful. Plaintiff repeatedly alleges that she "believed" and "felt" that it "appeared" and was "obvious" to her that she was being subjected to discrimination and retaliation. Compl. ¶¶ 75, 81, 100, 104, 140, 160, 179, 244. While Plaintiff goes to great lengths to engineer Mr. Napoli's participation in alleged discrimination, retaliation, and harassment, her claims of his participation in and/or aiding and abetting discrimination and retaliation are unsuccessful because they are bereft of any specific facts showing *how* Mr. Napoli *intentionally* participated in such conduct. Moreover, as discussed herein, the Plaintiff has failed to establish a primary violation of the NYSHRL or the NYCHRL against any of the Defendants. Therefore, Ms. Napoli could not have aided and abetted any such alleged conduct. (*See* Point VI, *supra*).

Accordingly, Mr. Napoli cannot be found liable to Plaintiff in her individual capacity under § 1981, the NYSHRL, or the NYCHRL for participating in and/or aiding and abetting in the alleged discrimination, harassment, and retaliation. Causes of Action one through nine should be dismissed with prejudice against Mr. Napoli.

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that this Court grant their motion to dismiss the Complaint in its entirety with prejudice and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        July 19, 2023

                                        Respectfully submitted,
                                        HOLLY G. ROGERS
                                        *Attorney for Defendants*

                                        By: */s/ Holly G. Rogers*
                                        Holly G. Rogers
                                        Melick & Porter, LLP
                                        11 Broadway, Suite 615
                                        New York, NY 10004
                                        Phone: (212) 541-7236
                                        Fax: (212) 480-8560
                                        E-mail: hrogers@melicklaw.com

**CERTIFICATION OF SERVICE**

This is to certify that on July 19, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

*/s/ Holly G. Rogers*
Holly G. Rogers