**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X

HEATHER M. PALMORE,                                     :
                                                        :
                             Plaintiff,                 :        Case No.: 1:23-cv-01616-ER
                                                        :
             v.                                         :
                                                        :
NAPOLI SHKOLNIK PLLC, PAUL NAPOLI,                      :
MARIE NAPOLI, and HUNTER SHKOLNIK,                      :
                                                        :
                             Defendants.                :
                                                        :
------------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO <u>DEFENDANTS' MOTION TO DISMISS</u>

**WIGDOR LLP**

David E. Gottlieb
Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dgottlieb@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………….…iii

PRELIMINARY STATEMENT ............................................................................................... 1

ALLEGATIONS OF THE COMPLAINT.................................................................................. 1

ARGUMENT .............................................................................................................................. 6

I.     PERSONAL JURISDICTION EXISTS OVER THE INDIVIDUAL DEFENDANTS .... 6

    A.    Legal Standard ................................................................................................. 6

    B.    This Court has Specific Jurisdiction Over the Individual Defendants................... 6

        1.    Specific Jurisdiction Under CPLR § 302(a)(1)........................................... 7

        2.    Specific Jusridiction Under CPLR § 302(a)(3)........................................... 8

    C.    The Exercise of Personal Jurisdiction Over the Individual Defendants Does Not Violate Due Process ........................................................................................ 9

II.    PLAINTIFF HAS PLAUSIBLY PLEADED HER CLAIMS UNDER FRCP 12(B)(6).. 10

    A.    Legal Standard ............................................................................................... 10

    B.    Plaintiff has Properly Pleaded Race Discrimination Claims Under Section 1981, NYSHRL and NYCHRL ................................................................................ 10

    C.    Plaintiff has Properly Pleaded Disability Discrimination Under NYSHRL and NYCHRL ....................................................................................................... 13

    D.    Plaintiff Has Properly Pleaded Retaliation Claims Under all Laws .................... 15

    E.    Plaintiff Has Properly Pleaded Application of the NYCHRL ............................. 18

    F.    Plaintiff Has Plausibly Pleaded Her Claims Under the FMLA ........................... 20

        1.    Plaintiff Has Properly Pleaded FMLA Interference ................................. 20

        2.    Plaintiff Has Properly Pleaded FMLA Retaliation ................................... 20

G.   Plaintiff Has Plausibly Alleged Claims Under New York's Anti-SLAPP Law ... 21

1.   Defendants' Blatant Violation of New York's Anti-SLAPP Law………..21

2.   The *Colorado River* Doctrine is Wholly Inapplicable Here .................... 23

III.   THE INDIVIDUAL DEFENDANTS ARE SUBJECT TO PERSONAL LIABILITY FOR THE ASSERTED CLAIMS ........................................................................ 25

IV.   VENUE IS PROPER IN THIS DISTRICT ..................................................... 28

V.   TO THE EXTENT THE COURT DEEMS IT NECESSARY, MS. PALMORE SHOULD BE GRANTED LEAVE TO AMEND ............................................................. 30

CONCLUSION.................................................................................................. 31

## <u>**TABLE OF AUTHORITIES**</u>

<u>Cases</u>                                                                                       <u>Page(s)</u>

<u>A.I. Trade Fin., Inc. v. Petra Bank</u>,
   989 F.2d 76 (2d Cir. 1993) .................................................................................6

<u>Abbott v. Harris Publ'ns, Inc.</u>,
   No. 97 Civ. 7648 (JSM), 2000 WL 913953 (S.D.N.Y. July 7, 2000) ......................................22

<u>Abe v. N.Y. Univ.</u>,
   No. 14 Civ. 9323, 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016) ...........................................23

<u>Abercrombie v. College</u>,
   438 F. Supp. 2d 243 (S.D.N.Y. 2006) ..................................................................23

<u>Amaya v. Ballyshear LLC</u>,
   340 F. Supp. 3d 215 (E.D.N.Y. 2018) ..................................................................19

<u>Andrea Theatres, Inc. v. Theatre Confections, Inc.</u>,
   787 F.2d 59 (2d Cir. 1986) ..............................................................................24

<u>Ashcroft v. Iqbal</u>,
   556 U.S. 662 (2009) ....................................................................................10

<u>Augustine v. AXA Fin., Inc.</u>,
   No. 07 Civ. 8362, 2008 WL 5025017 (S.D.N.Y. Nov. 24, 2008) ...........................................27

<u>Bell Atl. Corp. v. Twombly</u>,
   550 U.S. 544 (2007) ....................................................................................10

<u>Ben-Levy v. Bloomberg, L.P.</u>,
   518 F. App'x 17 (2d Cir. 2013) .........................................................................21

<u>Bermudez v. City of New York</u>,
   783 F.Supp.2d 560 (S.D.N.Y., 2011) .....................................................................16

<u>Burlington N. & Santa Fe Ry. Co. v. White</u>,
   548 U.S. 53 (2006) .....................................................................................16

<u>C.N.H. v. Levine</u>,
   149 N.Y.S.3d 889 (N.Y. Sup. Ct. 2021) ..................................................................9

<u>Calabrese v. Teoco Corp.</u>,
   637 F. Supp. 2d 160 (S.D.N.Y. 2009) ...................................................................29

Cavu Releasing, LLC. v. Fries,
    419 F. Supp. 2d 388 (S.D.N.Y. 2005)................................................................28

Coleman v. Grand,
    No. 18 Civ. 5663 (ENV) (RLM), 2021 WL 768167 (E.D.N.Y. Feb. 26, 2021).......................22

Colorado River Water Conservation Dist. v. United States,
    424 U.S. 800 (1976)....................................................................................23

De Cisneros v. Younger,
    871 F.2d 305 (2d Cir. 1989)...........................................................................24

Del Ponte by Del Ponte v. Universal City Dev. Partners, Ltd.,
    No. 7 Civ. 2360 (LMS), 2007 WL 9819187 (S.D.N.Y. July 13, 2007).....................................8

Dittmer v. County of Suffolk,
    146 F.3d 113 (2d Cir. 1998)...........................................................................23

Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,
    691 F.3d 134 (2d Cir. 2012)...........................................................................20

Dorchester v. Fin. Sec., Inc. v. Banco BRJ, S.A.,
    722 F. 3d 81 (2d Cir. 2013).............................................................................6

E.E.O.C. v. Bloomberg L.P.,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013)..................................................................19

Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP,
    332 F.Supp.2d 592 (S.D.N.Y. 2004)...................................................................25

Exec. Sec. Corp. v. Bertoli,
    No. 77 Civ. 714-CSH, 1977 WL 1016 (S.D.N.Y. May 18, 1977)............................................30

Fei v. WestLB AG,
    No. 07 Civ. 8785 (HB) (FM), 2008 WL 594768 (S.D.N.Y. Mar. 5, 2008)..............................16

Feingold v. New York,
    366 F.3d 138 (2d Cir.2004).............................................................................25

Giordano v. City of New York,
    274 F.3d 740 (2d Cir. 2001)...........................................................................13

Goodyear Dunlop Tires Operations, S.A. v. Brown,
    564 U.S. 915 (2011)......................................................................................6

Gordon v. N.Y. City Bd. of Educ.,
    232 F.3d 111 (2d Cir. 2000)...........................................................................16

Graziadio v. Culinary Inst. Of Am.,
    817 F.3d 415 (2d Cir. 2016)..............................................................20, 27

Hamilton v. Westchester Cnty.,
    3 F.4th 86 (2d Cir. 2021) ..............................................................14

Hardwick v. Auriemma,
    983 N.Y.S.2d 509 (1st Dep't 2014) ..............................................19

Hoffman v. Parade Publ'ns,
    907 N.Y.S.2d 145 (N.Y. 2010)......................................................18

Hollins v. U.S. Tennis Ass'n,
    469 F. Supp. 2d 67 (E.D.N.Y. 2006) ..............................................8

Holt v. Welch Allyn, Inc.,
    No. 05 Civ. 1135 (RSP) (GJD), 1997 WL 210420 (N.D.N.Y. Apr. 15, 1997) ........................27

Hous. Works, Inc. v. City of New York,
    72 F. Supp. 2d 402 (S.D.N.Y. 1999)..............................................17

In re Hoosick Falls PFOA Cases,
    No. 119 Misc. 0018 (LEK) (DJS), 2021 WL 1966720 (N.D.N.Y. May 17, 2021) ....................9

Ingrassia v. Cnty. of Sullivan,
    262 F.Supp.2d 116 (S.D.N.Y.2003)................................................20

Int'l Shoe Co. v. State of Washington,
    326 U.S. 310 (1945)..........................................................................9

Johnson v. Everyrealm, Inc.,
    No. 22 Civ. 6669 (PAE), 2023 WL 2216173 (S.D.N.Y. Feb. 24, 2023)..................................19

Johnson v. Palma,
    931 F. 2d 203 (2d Cir. 1991)..........................................................17

Kaytor v. Elec. Boat Corp.,
    609 F.3d 537 (2d Cir. 2010)......................................................16, 17

Kessler v. Wetchester Cnty Dep't of Social Svcs.,
    461 F.3d 199 (2d Cir. 2006)..........................................................15

Kingsway Fin. Servs. v. PricewaterhouseCoopers, LLP,
    420 F. Supp. 2d 228 (S.D.N.Y. 2005)............................................24

Launer v. Buena Vista Winery, Inc.,
    916 F. Supp. 204 (E.D.N.Y. 1996) ..................................................8

Leibowitz v. Cornell Univ.,
    584 F.3d 487 (2d Cir. 2009)...........................................................................................12

Leon v. Shmukler,
    992 F. Supp. 2d 179 (E.D.N.Y. 2014) ............................................................................8

Leucadia Nat. Corp. v. FPL Grp. Cap., Inc.,
    No. 93 Civ. 2908 (LAP), 1993 WL 464691 (S.D.N.Y. Nov. 9, 1993)......................29

Levine v. Arabian Am. Oil Co.,
    No. 84 Civ. 2396 (RLC), 1984 WL 1247 (S.D.N.Y. Nov. 16, 1984)........................29

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,
    732 F.3d 161 (2d Cir. 2013).............................................................................................9

Lindberg v. Dow Jones & Co., Inc.,
    No. 20 Civ. 8231 (LAK), 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021). ...............22

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)........................................................................................9, 12

Lyman v. New York & Presbyterian Hosp.,
    No.11 Civ. 3889 (KPF), 2014 WL 3417394 (S.D.N.Y. July 14, 2014) ...................14

Max v. Lissner,
    No. 22 Civ. 5070 (VEC), 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023)...................21

McHenry v. Fox News Network, LLC,
    No. 19 Civ. 11294, 2020 WL7480622 (S.D.N.Y. Dec. 18, 2020)............................11

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2d Cir. 1996)................................................................................................9

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013)...........................................................................................11

Missick v. City of New York,
    707 F. Supp. 2d 336 (E.D.N.Y. 2010) ..........................................................................13

Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP,
    No. 21 Civ. 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) ...................10

Mortg. Funding Corp. v. Boyer Lake Pointe, LC,
    379 F. Supp. 2d 282 (E.D.N.Y. 2005) ............................................................................6

Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,
    815 F. Supp. 2d 679 (S.D.N.Y. 2011)...........................................................................12

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983)..................................................................................................24

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007).................................................................................15

Pedroza v. Ralph Lauren Corp.,
    No. 19 Civ. 08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020)...................18

Porina v. Marward Shipping Co., Ltd.,
    521 F.3d 122 (2d Cir. 2008)...................................................................................9

Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc.,
    295 F.R.D. 18 (E.D.N.Y. 2013) ..............................................................................7

Ramiro Aviles v. S & P Glob., Inc.,
    380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019)..............................................................7

Rivera v. Rochester Genesee Reg'l Tramp. Auth.,
    743 F.3d 11 (2d Cir. 2014)....................................................................................10

Schomann Int'l Corp. v. Northern Wireless, Ltd.,
    35 F. Supp. 2d 205 (N.D.N.Y. 1999)......................................................................2

Smith v. Ouimet,
    No. 16 Civ. 184 (JLC), 2016 WL 3020825 (S.D.N.Y. May 19, 2016) ....................29

Snell v. Suffolk County,
    782 F.2d 1094 (2d Cir. 1986).................................................................................11

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
    450 F.3d 100 (2d Cir. 2006)....................................................................................7

Spencer v. Int'l Shoppes, Inc.,
    902 F. Supp. 2d 287 (E.D.N.Y. 2012) ...................................................................17

Towers v. State Univ. of New York at Stony Brook,
    No. 04–CV–5243, 2007 WL 1470152 (E.D.N.Y. May 21, 2007)............................13

United States v. Burke,
    504 U.S. 229 (1992)................................................................................................8

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)....................................................................................10

Wermann v. Excel Dentistry, P.C.,
    No. 13 Civ. 7028 (DAB), 2014 WL 846723 (S.D.N.Y. Feb. 25, 2014)...................16

White v. Dep't of Corr. Servs.,
    814 F. Supp. 2d 374 (S.D.N.Y. 2011)........................................................................17

Williams v. New York City Hous. Auth.,
    154 F. Supp. 2d 820 (S.D.N.Y. 2001)........................................................................11

Winner v. Tryko Partners, LLC,
    333 F. Supp. 3d 250 (W.D.N.Y. 2018)........................................................................7

Wood v. Sophie Davis School,
    2003 WL 21507579 (S.D.N.Y. 2003)........................................................................13

Zubulake v. UBS Warburg LLC,
    382 F. Supp. 2d 536 (S.D.N.Y. 2005)........................................................................12

Statutes

28 U.S.C. § 1404(a)........................................................................29

28 U.S.C § 1391(b)(2)........................................................................28

29 U.S.C. § 2611(4)(A)(ii)(I)........................................................................27

42 U.S.C. § 1981........................................................................10, 15, 25, 27

N.Y. Exec. Law § 292(21)(a)........................................................................14

N.Y. Exec. Law § 296........................................................................11

Rules

CPLR § 302(a)........................................................................6, 7, 8

CPLR § 3211........................................................................24

FRCP § 12(b)(2)........................................................................6

FRCP § 12(b)(3)........................................................................28

FRCP § 12(b)(6)........................................................................10

FRCP § 15(a)(2)........................................................................30

Plaintiff Heather M. Palmore submits this memorandum of law in opposition to Defendants' Napoli Shkolnik PLLC (the "Firm" or "Napoli"), Paul Napoli, Marie Napoli and Hunter Shkolnik's Motion to Dismiss.

## PRELIMINARY STATEMENT

Defendants' motion to dismiss is long on pages but woefully short on substance, let alone merit. Defendants have thrown nearly every conceivable argument at the wall—jurisdiction, failure to state a claim, lack of individual liability, technical pleading defects and improper venue—but each argument is fully bankrupt. Defendants cannot escape the fact that Ms. Palmore has set forth detailed allegations of discrimination that she and others have been subjected to, witnessed, observed and reported at the Firm and that created a wildly offensive hostile work environment. She has also alleged that when she raised complaints about this conduct, Defendants rained a storm of retaliation on her which was then escalated to an even greater torrent when she sought protection from counsel—culminating in Defendants filing a completely bogus retaliatory lawsuit against her in state court and terminating her employment in the days before they knew she would be bringing an action against them. There is not a single decision in the country—much less any case cited by Defendants—where any court has dismissed claims under these circumstances. Respectfully, this Court should not be the first.

## ALLEGATIONS OF THE COMPLAINT

Ms. Palmore is an accomplished trial attorney with over two decades of extensive experience in various fields of law. See Ex. A at ¶ 21.[1] In August 2021, Mr. Napoli recruited Ms. Palmore for the Firm. Id. ¶ 30. In October 2021, Ms. Palmore officially started as the Firm's "Chief Trial Counsel." Id. ¶ 39.

---

[1]  Citations to "Ex. __." refer to exhibits attached to the Affirmation of David E. Gottlieb.

In Ms. Palmore's tenure, she observed a lack of diversity and inclusion and an array

discriminatory conduct and disparate treatment:

- The Firm completely fails with respect to inclusion of Black employees.  When Ms. Palmore started there were 15 Partners and none of them were Black.  Of course, the three equity Partners are all white.

- Just two months after Ms. Palmore started, a stuffed bear was hung from a noose in direct view of only her office.  Id. ¶ 84.  Ms. Palmore complained to Human Resources ("HR") about this matter.  Id. ¶¶ 84-87.  Nobody from Napoli followed up with Ms. Palmore about this incident and there was no investigation.  Id. ¶ 88.

- Despite promising to market her as a prominent African American attorney, Ms. Palmore's frequent requests for marketing were either rebuffed or wholly ignored.  Id. ¶¶ 58-77.  Instead, Napoli decided to use paid Caucasian actors and images of white people for advertisements to communities of color.  Id. ¶¶ 76, 102.

- Ms. Napoli told Ms. Palmore "leave the negotiations to [us]" [referring to white attorneys] when she offered to assist in settlement negotiations for a matter.  Id. ¶ 78.

- Mr. Napoli introduced Ms. Palmore as the "Black female Ben Crump."  Id. ¶ 90.

- While attending a conference, Joseph Napoli (Partner) stated to Ms. Palmore, "Who do you think you are, walking around here like you are an Executive at [Napoli]," as soon as she entered the welcome reception.  Id. ¶ 95.

- At that same event, Ms. Palmore proceeded to follow fellow Napoli employees (including Mr. Napoli and Ms. Napoli) to the table they were going to when Joseph Napoli approached her before she could even reach the table and said, "Get away…go over there."  Ms. Palmore was publicly humiliated.  Id. ¶¶ 97-8.

- Ms. Palmore appeared on a case involving a minority plaintiff alongside Mr. Napoli and other white attorneys.  Prior to entering courtroom, Mr. Napoli told her, the only person of color, to "be quiet and don't say anything."  Id. ¶¶ 99-100.

- Ms. Palmore spent two days filming commercials at Mr. Shkolnik's request.  However, after spending multiple days filming, it was never aired.  Instead, the same commercial was shot and aired with two paid white actors.  Id. ¶¶ 101-02.

- Ms. Palmore was excluded from an Organizational Guide distributed at Napoli which included all the relevant staff and their titles.  Chun Ho Chung (Partner) was also incorrectly identified as a member of the "Translation Team."  Id. ¶ 108.

All of that happened before September 2022.  Then, an Employee Survey was circulated to employees and a Task Force was formed to discuss the results.  Id. ¶¶ 119, 121.  Notably, an anonymous employee response complained, *inter alia*, that Napoli acquiesces its client's and attorneys' racist and aggressive conduct toward minority employees.  Id. ¶ 125.

Just before the Task Force meeting, Ms. Palmore learned from a female associate that the associate's case was reassigned to a male attorney because the client had requested a male attorney because "men are more aggressive" and will "get the job done."  Id. ¶ 127.  The female associate informed Ms. Palmore that Ms. Napoli had minimized the client's discriminatory request and said "it's just the business" and "half our clients are difficult."  Id. ¶ 129.

At the Task Force meeting, Ms. Palmore stated that Diversity, Equity and Inclusion was an issue at Napoli that needed to be taken more seriously.  Id. ¶ 133.  Specifically, Ms. Palmore raised concerns about the anonymous employee response which complained about the Firm acquiescing and engaging in discriminatory conduct; she implored the Task Force that the Firm needed to take a firm stance against workplace discrimination.  Id. ¶ 133.  In response, Gloria Werle (Head of HR) exclaimed that "as a Latina woman…I have never experienced discrimination, so I don't know what you mean by discrimination."  Id. ¶ 134.  Of course, Ms. Palmore had a different experience and decided that she had to make a more formal complaint.  Id. ¶ 136.

On September 24, 2022, Ms. Palmore filed a formal complaint of discrimination.  Id. ¶ 137.  In response, Mr. Napoli called her and screamed at her, yelled that it is his firm and he can run it however he wants, and blamed her for "ruining [his] dinner plans."  Id. ¶¶ 138-39.  From that day forward, Ms. Palmore was subjected to a campaign of retaliation creating a hostile work environment, and ultimately resulting in her termination and the Firm filing a bogus and retaliatory lawsuit against her.  The sequence was as follows:

3

- The Firm conducted a sham investigation into Ms. Palmore's complaint that had a pre-determined outcome. The supposed unbiased investigator would later be revealed to be the Firm's advocacy counsel. Id. ¶¶ 142-45, 171.

- Just three days after the investigation, Mr. Napoli called Ms. Palmore to scream at her and berate her for raising complaints because he allegedly had to spend "$50,000 for [the] investigation," and claimed Ms. Palmore "did not care." Id. ¶ 148.

- Mere weeks after her complaint, Ms. Palmore received a Microsoft Teams meeting invitation, without any context, from Mr. Napoli and Mr. Shkolnik. Id. ¶ 161. In response, Ms. Palmore simply requested an agenda for the meeting as she was scared of what they might do. Id. ¶ 162. In response, seething with animus, Mr. Shkolnik called Ms. Palmore's request for an agenda a "demand" and claimed that he had never in his career been requested to provide an agenda regarding a requested meeting. Id. ¶ 163.

- Ms. Palmore attended the meeting and was told, for the first time, that there were allegedly problems with her work without providing any examples. Id. ¶164-5. Mr. Napoli also told her that her salary would be reduced. Id. ¶ 167.

- That night, to protect herself from further retaliation, Ms. Palmore engaged in protected activity when her counsel sent the Firm a representation letter stating her intention to pursue discrimination claims and provide more detail about the claims in a future letter. Id. ¶ 170. This enflamed Defendants more — leading to further unrelenting retaliation.

- The next day, Napoli shut down Ms. Palmore's remote access to Napoli's network entirely. This issue persisted through January 2023. Id. ¶ 276. Consequently, Ms. Palmore was forced to work in-office while battling a severe upper respiratory infection. Id. ¶ 173.

- Three days later, Mr. Napoli requested Ms. Palmore's availability for another meeting and Ms. Palmore informed him that she would be unavailable in order to attend her niece's funeral. Id. ¶ 176. In response, Mr. Napoli falsely accused Ms. Palmore of avoiding him and told her, "it's not my job to chase you." Id. ¶ 177. During this exchange, Mr. Napoli also told Ms. Palmore that her "spurious claims [of discrimination]" had already been "disposed of." Id. ¶¶ 180-88.

- Ms. Palmore was treated like a pariah, including being excluded from meetings and social events, subjected to intense scrutiny, spoken to condescendingly and removed from the Personal Injury Department and Partner email distribution lists which she had been a part of since her hire. Id. ¶¶ 172, 196, 202, 237, 217, 239.

- On January 12, 2023, at the conclusion of a failed mediation, Napoli begged Ms. Palmore to hold off filing a lawsuit to give the parties a chance to schedule a second mediation. Ms. Palmore agreed. As it would turn out, the Firm would use this

time to further harass Ms. Palmore, prepare a lawsuit against her and fabricate a basis to fire her—and do so before Ms. Palmore would file her claims against the Firm. Id. ¶¶ 231-33, 251.

- On February 13, 2023, Ms. Palmore alerted HR that she was suffering from serious medical conditions and that she would need to take a week of medical leave. Id. ¶ 240. Mr. Napoli responded to her request and accused her of taking a "large number" of days off and demanded she provide supporting medical documentation. Id. ¶¶ 241-42.

- Just one day after, the Firm emailed Ms. Palmore a "draw schedule" that detailed Ms. Palmore's "outstanding balance due to [Napoli] [of] $400,770.38." Id. ¶¶ 247, 249. Ms. Palmore, who had worked at Napoli for over a year, had never been asked for a payback on any draw (and it is not permitted under her contract). Id. ¶¶ 247-48, 275.

- On February 23, 2023, days before the scheduled second mediation session, Napoli filed a completely frivolous pre-emptive lawsuit against Ms. Palmore. Id. ¶ 251. As alleged, the Napoli State Court Action is entirely baseless. For instance, it asserts a claim of defamation by accusing her of making "false and defamatory claims of discrimination," but her allegations are true. Id. ¶ 253. As another example, it accused Ms. Palmore of working for two firms at once but the only "evidence" proffered of that is her social media profile that merely references a firm, Palmore Law Group, P.C. ("Palmore Law"), that she briefly operated *before* starting at Napoli. Id. ¶ 260. At the same time, another Napoli attorney, a white male, openly displays his law firm on his social media profile without penalty. Id. ¶ 261. It further asserts that Ms. Palmore's formation of and reference to Palmore Law is somehow a basis to claim breach of fiduciary duty and breach of her employment agreement. Id. ¶ 265. But Ms. Palmore's prior formation of and reference to Palmore Law on social media is not a breach of any duty nor contract. For the sake of brevity, as to the completely bogus nature of the Napoli State Court Action, we respectfully refer the court to the pages of the Complaint which outline the utter baselessness of the Napoli State Court Action. Id. ¶¶ 266-277.

- Finally, on February 26, 2023, the Firm fired Ms. Palmore—the culmination of the retaliatory campaign against her that started after her initial complaint and escalated each time she tried to protect herself or enforce her rights. Id. ¶¶ 280-81

To say Defendants' retaliatory conduct has been despicable would be a massive understatement.

But Ms. Palmore's experience is not unique. The Firm harasses, discriminates and retaliates against those who assert their rights as a *modus operandi*. Defendants have been sued several times by former employees for abhorrent harassment, discrimination, retaliation and wrongful termination. See, e.g., Id. at ¶ 9 (citing Connolly v. Napoli, Kaiser & Bern, LLP, et al., Index No.

105224/05 (N.Y. Sup. Ct.); Dennis v. Napoli, et al., No. 14 Civ. 04649 (PAE) (S.D.N.Y.)); see also

Moy v. Napoli Shkolnik, PLLC, et al., 1:23 Civ. 03788 (MKV) (S.D.N.Y.)) (former Napoli

employee alleging discrimination and retaliation); Rubin v. Napoli Bern Ripka Shkolnik, LLP et al.,

Index No. 154060/2015 (N.Y. Sup. Ct.) (former employee of Mr. Napoli, Ms. Napoli and Mr.

Shkolnik's previous firm alleging discrimination, breach of contract and retaliation).  Clearly,

discrimination and retaliation are part of Defendants' standard operating procedures.

## ARGUMENT

## I.  PERSONAL JURISDICTION EXISTS OVER THE INDIVIDUAL DEFENDANTS

### A.  Legal Standard

A plaintiff may defeat a Rule 12(b)(2) motion on the issue of jurisdiction "by making a

*prima facie* showing of jurisdiction by way of the complaint's allegations, affidavits, and other

supporting evidence."  Mortg. Funding Corp. v. Boyer Lake Pointe, LC, 379 F. Supp. 2d 282, 285

(E.D.N.Y. 2005).  At this stage, when conflicting evidence is presented, the court must credit a

plaintiff's allegations in support of jurisdiction since "doubts are resolved in the plaintiff's favor,

notwithstanding a controverting presentation by the moving party."  A.I. Trade Fin., Inc. v. Petra

Bank, 989 F.2d 76, 80 (2d Cir.1993).  In short, "pre-discovery, a plaintiff need only plead, in good

faith, legally sufficient allegations of jurisdiction."  Dorchester v. Fin. Sec., Inc. v. Banco BRJ,

S.A., 722 F. 3d 81, 84-85 (2d Cir. 2013).

### B.  This Court has Specific Jurisdiction Over the Individual Defendants

A court has specific jurisdiction over a defendant where there is an "affiliation between the

forum and the underlying controversy, principally, activity or an occurrence that takes place in the

forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  Under

CPLR 302(a), New York's long-arm statute, a court has specific personal jurisdiction where (as

pertinent here) the defendant "(1) transacts any business within the state; or . . . (3) commits a

tortious act outside of New York that causes injury in New York, where the defendant (i) should reasonably expect its actions to have consequences in New York and (ii) derives substantial revenue from interstate or international commerce."

### 1.      Specific Jurisdiction Under CPLR § 302(a)(1)

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). Courts in this Circuit have found that "by definition" "claims of discrimination and retaliation" related to employment that "occur[red] in New York," satisfy the requirements of section 302(a)(1). Winner v. Tryko Partners, LLC, 333 F. Supp. 3d 250, 260 (W.D.N.Y. 2018). Plaintiff has clearly done that here (see, e.g., supra at p. 2-5)—that should end the inquiry.

But Defendants argue that jurisdiction does not lie unless the discriminatory conduct was performed for their own benefit. This is plainly wrong, and in any event, of course Plaintiff has plausibly alleged that Defendants acted in what they believed to be their own perverse interest. In fact, the case cited by Defendants, Rainbow Apparel Distribution Ctr. Corp. v. Gaze U.S.A., Inc., 295 F.R.D. 18, 26 (E.D.N.Y. 2013), does not even contain the quote cited in the moving papers.[2] Dkt. No. 48 ("Defs.' Br.") at p. 6.

Moreover, "[u]nder New York law, if a corporation has sufficient in-state contacts to fall subject to personal jurisdiction, then a corporate officer who has 'played a part in the [corporate] activities that gave rise to the action' is likewise subject to jurisdiction." Ramiro Aviles v. S & P Glob., Inc., 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019). Mr. Napoli, Ms. Napoli and Mr. Shkolnik

---

[2]      We respectfully urge the Court to take a careful review of the cases cited by Defendants throughout their moving papers as they are largely either wholly distinguishable or do not stand for the proposition cited.

(the "Individual Defendants") are alleged bad actors and principals of a firm headquartered in New York.  Accordingly, the specific jurisdiction exists under CPLR 302(a)(1).

### 2.    Specific Jurisdiction Under CPLR § 302(a)(3)

Jurisdiction is also appropriate under CPLR § 302(a)(3), which permits courts to exercise personal jurisdiction where "(1) the [d]efendant's commission of a tort outside of New York State caused injury to the [p]laintiff within New York State, and (2) that the [d]efendant either regularly does or solicits business in New York, engages in any other persistent course of conduct in New York, or derives substantial revenue from goods used or consumed or services rendered in New York." Del Ponte by Del Ponte v. Universal City Dev. Partners, Ltd., No. 7 Civ. 2360 (LMS), 2007 WL 9819187, at *3 (S.D.N.Y. July 13, 2007).

Under CPLR § 302(a)(3), a defendant's physical presence in forum is immaterial if the injury was felt by the plaintiff in New York.  To the extent the Individual Defendants were not present in New York when they were harassing her, firing her and filing retaliatory lawsuits against her is therefore irrelevant.  Furthermore, "acts of discrimination are often considered to be civil rights violations which have been found to be torts." Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 210 (E.D.N.Y. 1996) (citing United States v. Burke, 504 U.S. 229 (1992)); see also Hollins v. U.S. Tennis Ass'n, 469 F. Supp. 2d 67, 77 (E.D.N.Y. 2006) ("It is undisputed that [the] alleged discriminatory acts constitute torts within the meaning of section 302(a).").

Accordingly, jurisdiction under CPLR § 302(a)(3) is warranted here.[3]

---

[3]    To the extent the Court finds that Plaintiff has not made a *prima facie* showing of personal jurisdiction, Plaintiff respectfully requests this Court order jurisdictional discovery. See Leon v. Shmukler, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) ("It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.").

### C.     The Exercise of Personal Jurisdiction Over the Individual Defendants Does Not Violate Due Process

"Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 127 (2d Cir. 2008) (quoting Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)).  The due process inquiry requires "a two-step analysis." Id.  First, the court must decide whether the Individual Defendants have "sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." Id. Second, if it does, the court considers "whether the assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case.'" Id. (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)).

Defendants do not even engage in a Due Process analysis—because the Individual Defendants undeniably transact business within the state insofar as they run and operate a law firm headquartered in New York and with multiple offices in the state, and regularly practice law within and appear before courts within the State.  See Ex. A at ¶ 17-20; see also C.N.H. v. Levine, 149 N.Y.S.3d 889 (N.Y. Sup. Ct. 2021) (Marie Napoli appearing as counsel of record); In re Hoosick Falls PFOA Cases, No. 119 Misc. 0018 (LEK) (DJS), 2021 WL 1966720 (N.D.N.Y. May 17, 2021) (Paul Napoli and Hunter Shkolnik appearing as counsel of record).  Under any reasonable analysis, it is clear the Individual Defendants have "purposefully availed [themselves] of the privilege of doing business in [New York] and could foresee being haled into court there." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013).  Thus, there is no Due Process concern.

## II.   **PLAINTIFF HAS PLAUSIBLY PLEADED HER CLAIMS UNDER FRCP 12(b)(6)**

### A.   **Legal Standard**

On a motion to dismiss, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015). The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B.   **Plaintiff has Properly Pleaded Race Discrimination Claims Under Section 1981, NYSHRL and NYCHRL**

Plaintiff alleges numerous facts in support of race discrimination under 42 U.S.C. § 1981 ("Section 1981"), the New York State and City Human Rights Law ("NYSHRL" and "NYCHRL," respectively). The standards are slightly different under the applicable laws.

Under Section 1981, Ms. Palmore need only plausibly allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Rivera v. Rochester Genesee Reg'l Tramp. Auth., 743 F.3d 11, 20 (2d Cir. 2014). Whether conduct is "severe or pervasive enough to create a hostile work environment involves a question of fact and is ***generally inappropriate to determine at the pleading stage of a litigation***." Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (emphasis added). As to Ms. Palmore's discrete act claims (termination, retaliatory lawsuit, etc.), she need only plead that race was a "motivating factor" in the conduct. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015).

10

The standard for maintaining a race discrimination claim under the NYSHRL and the NYCHRL is lower.  In 2019, the NYSHRL was amended to mirror the hostile work environment standard of the NYCHRL and removed the "severe or pervasive" requirement.  N.Y. Exec. Law § 296; McHenry v. Fox News Network, LLC, No. 19 Civ. 11294, 2020 WL 7480622, at *6 (S.D.N.Y. Dec. 18, 2020) (citations omitted).  All claims under NYCHRL and NYSHRL now require only that a plaintiff allege "less well" treatment motivated from a protected characteristic.  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013).

Plaintiff has set forth the allegations on the Complaint in summary form above (see supra at pp. 2-5) and for the sake of brevity those allegations will not be repeated.  However, Ms. Palmore has alleged racist imagery (a bear hanging from a noose outside her office),[4] racially-based remarks about her and others, disparate treatment of Black and minority employees, disparate treatment in marketing and work conditions and disparate treatment with respect to her termination.  Plaintiff has also identified others who also have similar experiences and feel the workplace at the Firm is racially discriminatory.  At the pleading stage, this is sufficient.

Unsurprisingly, Defendants ignore the myriad particularized instances of discrimination alleged and cherry-pick allegations from the Complaint to craft a self-serving narrative—as if this were a summary judgment motion or trial—in which Defendants did not engage in discriminatory conduct.  While Defendants argue that Ms. Palmore makes "conclusory allegations" that "require an inferential leap," each allegation cited by Defendants as "conclusory" is made in connection with detailed allegations of Defendants' engagement in discriminatory conduct.  Defs.' Br. at p. 24.  See Ex. A ¶¶ 99, 102, 125.  For instance, an allegation that Defendants contend is conclusory is that

---

[4]     To this point, the Second Circuit has long noted that the placement of a noose in the workplace can reasonably be perceived as racially hostile conduct.  See Snell v. Suffolk County, 782 F.2d 1094, 1098 (2d Cir. 1986).  This District has held that the display of a noose falls within the category of "intimidating conduct" that "almost always create a hostile work environment."  Williams v. New York City Hous. Auth., 154 F. Supp. 2d 820, 825 (S.D.N.Y. 2001).

Defendants "engaged in and acquiesced racist conduct . . ."  But that allegation follows an array of properly factually pleaded allegations.  If Defendants want to argue that Ms. Palmore was a poor performer, that they made decisions related to marketing on the merits and that they treat people of all races equally, they can attempt to do so on summary judgment or at trial.

Defendants are simply wrong when they argue that Ms. Palmore's allegations of particularized instances of discriminatory conduct inflicted upon other Napoli employees "are insufficient to establish discriminatory animus."  Defs.' Br. at pp. 28-29.  Ms. Palmore need not *establish* discriminatory animus at the pleading stage; she need only plead allegations that support an "inference of discriminatory motivation."  Additionally, Napoli's mistreatment of "other employees" is directly "relevant to the issue of the employer's discriminatory intent."  Zubulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 544-45 (S.D.N.Y. 2005).

Defendants also argue that Ms. Palmore's race discrimination claims fail because she did not allege "how any other employee(s) are similar to her in all material respects or engaged in conduct similar to hers."  Defs.' Br. at p. 30.  But there is no such requirement that a plaintiff alleging race discrimination identify in a pleading other people who were treated better, and Defendants cite no case saying so.  The case cited by Defendants, Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) even confirmed that at the pleading stage "such evidence is not necessary."  According to this argument, a plaintiff alleging racial epithets in the workplace would be unable to pursue a discrimination claim.

Here, "[a]n inference of discrimination can arise from circumstances including, ***but not limited to***, the more favorable treatment of employees not in the protected group.'"  Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (emphasis added).  Regardless, while Ms. Palmore has alleged more than a sufficient factual predicate for her race discrimination claims, she has *also* alleged more favorable treatment of comparable employees

outside her protected group.  For instance, Ms. Palmore alleges that when appearing in court alongside Mr. Napoli she was told to "be quiet and don't say anything," which he did not say to white colleagues.  Ex. A ¶ 99.  Moreover, Ms. Palmore alleges that as part of Napoli's retaliatory lawsuit against her, she is persecuted for a reference to Palmore Law on her Instagram when Napoli's Of Counsel, a white male, openly displays his personal law practice on his social media profile without penalty.  Id. ¶ 261.  These are just examples.

Courts in this circuit routinely decline to dismiss race discrimination claims with much less discriminatory conduct alleged than here.  See, e.g., Wood v. Sophie Davis School, 2003 WL 21507579, at *4 (S.D.N.Y. 2003) (finding allegations concerning mistreatment on account of race "sufficient, at this stage, to withstand a motion to dismiss"); Towers v. State Univ. of New York at Stony Brook, No. 04–CV–5243, 2007 WL 1470152, at *2 (E.D.N.Y. May 21, 2007) (declining to dismiss hostile work environment claim where plaintiff adequately alleged overwhelming workload based on gender).  Therefore, Defendants' motion to dismiss Ms. Palmore's race discrimination claims (1st, 3rd and 5th Causes of Action) should be denied.

### C.    Plaintiff has Properly Pleaded Disability Discrimination Under NYSHRL and NYCHRL

To state a disability discrimination claim under the NYSHRL and the NYCHRL, Ms. Palmore merely has to allege that: (1) she has a "disability" or was perceived to have a disability; (2) she was otherwise qualified perform the essential functions of the job with or without reasonable accommodation; (3) that she suffered an adverse employment action; and (4) this was because of her disability.  See Missick v. City of New York, 707 F. Supp. 2d 336 (E.D.N.Y. 2010) (stating the analytical framework for disability claims under the NYSHRL and the NYCHRL).  The NYSHRL defines disability "far broader than the ADA definition."  Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001).  According to the NYSHRL, a "disability" is:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment . . .

N.Y. Exec. Law § 292(21)(a).  The NYCHRL defines disability even more broadly as "any physical, medical, mental or psychological impairment."  N.Y. City Admin. Code § 8-102(16)(a).

Defendants contend that Ms. Palmore's disability discrimination claim should be dismissed because she does not allege that "she ever notified her employer that she had a disability."  Defs. Br. at pg. 31.  However, once again, Defendants are flat out wrong.  Ms. Palmore alleges that she alerted her employer *via* email to Human Resources personnel Roxanne Rowe that she [Ms. Palmore] would need to take medical leave due to suffering from serious, unforeseen medical conditions.  See Ex. A ¶ 240.  As detailed further below, Ms. Palmore also corresponded with Mr. Napoli regarding serious medical condition and had even submitted medical records he demanded so that she could go on medical leave.  Id. ¶¶ 241-43; 249.

Clearly that is notice of a "physical, medical, mental or psychological impairment."  See e.g., Hamilton v. Westchester Cnty., 3 F.4th 86, 94 (2d Cir. 2021) ("The district court did not acknowledge the possibility that a temporary injury *can* constitute a qualifying disability."); Lyman v. New York & Presbyterian Hosp., No. 11 Civ. 3889 (KPF), 2014 WL 3417394, at *6 (S.D.N.Y. July 14, 2014) ("Under the NYSHRL ... any 'medically diagnosable impairment is necessarily a disability' for discrimination-claim purposes.").

Additionally, without citing a single supporting case, Defendants incorrectly argue that Ms. Palmore failed to allege that Napoli is an employer covered by the statute, that she did not suffer an adverse employment action, that she could perform the essential functions of her job with a reasonable accommodation and/or that Defendants refused to make such accommodation.  Defs. Br.

at p. 31.  Respectfully, it is difficult to even respond to an argument that has absolutely no support, citation or explanation and just tries to state something without justification.

That said—these items are all either specifically pleaded or easily inferred from the Complaint.  Ms. Palmore clearly alleges that Defendants were her employer (Ex. A ¶¶ 17-20), that she was qualified for the position based on her extensive experience and insofar as she alleges she worked in her position for over a year without receiving negative feedback (Id. ¶ 164), that when requesting and during medical leave she was harassed (Id. ¶¶ 245-47) and that shortly thereafter she was terminated (which effectively cut off her health insurance benefits at a time when she is dealing with serious medical conditions).  Id. ¶¶ 279, 281.

Surely, particularly given the temporal proximity between her request for leave and the adverse actions noted above, Ms. Palmore has alleged a plausible inference that she was discriminated against based on her medical disability.  Do Defendants suggest that employees who are fired within 10 days after disclosing medical conditions and taking medical leave cannot assert a disability discrimination claim?  That would turn the law completely on its head.  Accordingly, Defendants' motion to dismiss Ms. Palmore's disability discrimination claims (3rd and 5th Causes of Action) should be denied.

### D.      Plaintiff Has Properly Pleaded Retaliation Claims Under all Laws

Section 1981, NYSHRL and NYCHRL also prohibit an employer from retaliating against an employee for opposing discrimination.  Kessler v. Wetchester Cnty Dep't of Social Svcs., 461 F.3d 199, 205-206 (2d Cir. 2006).  At the pleading stage, Ms. Palmore need only plead that "(1) she participated in a protected activity known to the defendant[s]; (2) the defendant[s] took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).  Here,

Defendants challenge only the third element, arguing that Ms. Palmore has not pleaded facts to suggest a causal connection between her protected activity and the adverse actions taken against her.

To be sure, Ms. Palmore unequivocally engaged in protected activity on numerous occasions—her September 24, 2022 email; her counsel's representation letter; her counsel's demand letter and her refusing to resolve her claims and threat to file litigation (which she held off doing at the Firm's request at the conclusion of the mediation).  Ex. A ¶¶ 137, 170, 197.  See Bermudez v. City of New York, 783 F.Supp.2d 560, 575 (S.D.N.Y. 2011) ("A plaintiff engages in a protected activity when she opposes any practice made an unlawful employment practice ... or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.").

To establish retaliatory conduct, Ms. Palmore need only plead conduct which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  Retaliation can include everything from subjecting someone to a hostile work environment, to terminating an employee, to suing an employee/former employee.  See, e.g., Kaytor v. Elec. Boat Corp., 609 F.3d 537 (2d Cir. 2010) (retaliatory hostile work environment actionable); Wermann v. Excel Dentistry, P.C., No. 13 Civ. 7028 (DAB), 2014 WL 846723, at *4 (S.D.N.Y. Feb. 25, 2014) (contesting unemployment benefits can constitute retaliation); Fei v. WestLB AG, No. 07 Civ. 8785 (HB) (FM), 2008 WL 594768, at *3 (S.D.N.Y. Mar. 5, 2008) ("lawsuits in response to a former employee's attempt to vindicate his rights can constitute retaliation").

That brings us to causation.  Causation can be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir.

2000); White v. Dep't of Corr. Servs., 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) ("[n]egative reactions by an employer to a plaintiff's complaints of discrimination have been deemed indicative of retaliatory animus."); Hous. Works, Inc. v. City of New York, 72 F. Supp. 2d 402, 426 (S.D.N.Y. 1999) (observing that a pattern of antagonism may be sufficient to demonstrate retaliation); Spencer v. Int'l Shoppes, Inc., 902 F. Supp. 2d 287, 301 (E.D.N.Y. 2012) ("[e]ven if the litigation is not frivolous, it still may be considered retaliatory if motivated, even partially, by a retaliatory animus").

Where, as here, the adverse employment actions directly follow the protected activity, the timing alone "is sufficient to establish the requisite causal connection." Johnson v. Palma, 931 F. 2d 203, 208 (2d Cir. 1991); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010) (finding temporal proximity between the adverse employment action and the protected activity can be sufficient to establish causation). From the moment Ms. Palmore engaged in protected activity, she was subjected to a campaign of retaliation, and each time she attempted to speak up, Defendants further victimized her and escalated their retaliatory conduct. The chart below is demonstrative:

| Protected Activity | Temporal Proximity | Non-Exhaustive Summary of Retaliation |
|---|---|---|
| Sept. 24, 2022, Ms. Palmore sends email complaint of discrimination. ¶137. | Starting same day. | Defendants subject Ms. Palmore to hostile work environment including yelling at her for raising complaints (¶ 139), conducting a sham investigation (¶ 144), yelling at her again for raising complaints (¶¶ 146-49), ignoring and excluding her (¶¶215, 224), belittling her, raising false claims of performance problems and lowering her compensation (¶¶ 164-67). |
| Oct. 19, 2022, Ms. Palmore retains counsel.  ¶170. | Starting next day. | Defendants interfere with and shut off her computer access (¶ 77), accuse her of avoiding them while she was attending a family member's funeral (¶¶ 177), demean and berate her for asserting claims of discrimination (¶¶179-89), exclude her from Partner meetings and remove her from Partner email distribution lists (¶¶193-96). |
| Nov. 4, 2022, Ms. Palmore's counsel sends a detailed, 20-page letter describing her claims.  ¶197. | Starting same day. | Defendants shut off her computer access (¶ 198), excluded her from meetings (¶¶ 201-02), accuse her of "not doing any work" while inhibiting her from performing her job since she retained counsel (¶ 203). |
| Jan. 12, 2022, Ms. Palmore asserts her claims in mediation and refuses to settle on the Firm's terms. | Starting same day. | The Firm begged Palmore to hold off filing her complaint in order to schedule another mediation, a fraudulent request intended only to buy the Firm time to file its own pre-emptive action against her (¶¶ 232-33). Thereafter, hostile conduct includes challenging the integrity of her Daily Report (¶ 236) and assigning demeaning tasks (¶¶ 238-39). |
| Feb. 13, 2022, Ms. Palmore discloses a medical condition requiring accommodations and a leave of absence. | Starting same day. | The Firm harasses Palmore, including asking for her to repay $400,000 in compensation without basis (¶ 247), filing a baseless lawsuit against her 8 days later (¶ 251) and firing her 3 days after that (¶ 279). |

Respectfully, even based on even the non-exhaustive list of retaliatory conduct illustrated above, Ms. Palmore has more than sufficiently alleged that she was the subject of relentless retaliatory animus.  Therefore, Defendants' motion to dismiss Ms. Palmore's Retaliation claims (2nd, 4th and 6th Causes of Action) should be denied.

18

**E.     Plehtiff Has Properly Pleaded Application of the NYCHRL**

Even according to Defendants' cases, the NYCHRL does not restrict non-residents from stating a claim, "but it rather ***expands protections to non-residents who work in the city***." Pedroza v. Ralph Lauren Corp., No. 19 Civ. 08639 (ER), 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020) (emphasis added).  To state a claim under the NYCHRL, a "non-resident plaintiff must allege that the discriminatory conduct had an impact in New York City." Id.; Hoffman v. Parade Publ'ns, 907 N.Y.S.2d 145 (N.Y. 2010).  "To determine the location of the discriminatory acts, a court is to look at the location(s) where the conduct had an impact, which may not necessarily be the place in which it occurred; the impact must have been felt by the plaintiff in New York City." Johnson v. Everyrealm, Inc., No. 22 Civ. 6669 (PAE), 2023 WL 2216173, at *15 (S.D.N.Y. Feb. 24, 2023)

Ms. Palmore has clearly alleged an "impact" in New York City.  Ms. Palmore alleged that she routinely worked at Napoli's NYC office, and therefore, was by necessity subjected to a hostile work environment in New York City.  See Plaintiff's Declaration ("Pl.'s Decl.") ¶ 1.  Ms. Palmore's termination meant she no longer had a place to work in New York City.  Id. ¶ 3.  Ms. Palmore also alleged acts of discrimination and operative events of her employment that occurred in New York City.  Id. ¶¶ 4-8.  Ms. Palmore was also in New York City during the sham mediation in which the Firm begged Ms. Palmore not to file a lawsuit in order to gain time to file a pre-emptive lawsuit against her.  Id. ¶ 7.  While working at the Firm, Ms. Palmore was often in New York City for appearances, depositions, client meetings and the like.  Id. ¶ 8.  All of that came to an end when she was fired—clearly an "impact" felt in New York City.

Defendants' cited cases are inapposite.  In Amaya v. Ballyshear LLC, 340 F. Supp. 3d 215, 221 (E.D.N.Y. 2018), the plaintiff did "not contend that she ever worked in New York City while employed by the Corporate Defendants."  In E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013), the plaintiff "lived in New Jersey and worked almost exclusively out of [the

defendant's] Princeton [New Jersey] office."  In <u>Hardwick v. Auriemma</u>, 983 N.Y.S.2d 509 (1st

Dep't 2014), the plaintiff was geographically located in another country (England) when the alleged

discriminatory conduct occurred.  The matter at bar bears no relation to these cases.

     Therefore, Defendants' motion to dismiss her NYCHRL claims (5th and 6th Causes of

Action) should be denied.

     **F.**    <u>**Plaintiff Has Plausibly Pleaded Her Claims Under the FMLA**</u>

     **1.**    **Plaintiff Has Properly Pleaded FMLA Interference**

     An employer violates the Family and Medical Leave Act's ("FMLA") interference clause

where it has "denied or otherwise interfered with a benefit to which [an eligible employee] was

entitled under the FMLA."  <u>Graziadio v. Culinary Inst. Of Am.</u>, 817 F.3d 415, 424 (2d Cir. 2016).

Defendants do not argue that they did not unlawfully interfere with Ms. Palmore's protected FMLA

rights; rather, Defendants rely on technical arguments that are wholly form over substance.

According to Defendants, Ms. Palmore's FMLA interference claim should be dismissed because

she fails to allege that (1) Napoli is an FMLA-covered employer, (2) she was employed for at least

twelve months at the point she requested leave or that (3) she worked for at least 1,250 hours in the

twelve months prior to requesting leave.

     However, Ms. Palmore does allege that she worked for more than one year (Ex. A (hired

10/11/21) ¶ 39 (fired 02/26/23) ¶ 279) and the remainder can be reasonably inferred (*i.e.,* that a full-

time lawyer worked more than 1,250 hours in a year, *i.e.,* a 31-hour work week).  To the extent this

Court believes Ms. Palmore did not allege the eligibility requirements for FMLA violations, this is

easily cured by amending the Complaint and Ms. Palmore should be granted leave to amend.  <u>See</u>

<u>Ingrassia v. Cnty. of Sullivan</u>, 262 F.Supp.2d 116, 120 (S.D.N.Y.2003) (allowing the plaintiff to

amend to cure the deficiency where the plaintiff failed to specify that she worked the necessary

hours in the correct time period).

## 2.    Plaintiff Has Properly Pleaded FMLA Retaliation

To state an FMLA retaliation claim, a plaintiff need only plead that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 147 (2d Cir. 2012).  However, Ms. Palmore need not establish each of these prongs at the pleading stage, they need only be plausibly alleged or inferred.

The only argument Defendants raise as to Ms. Palmore's FMLA retaliation claim is an attempt to argue fact issues as if this were a summary judgment motion.  Defendants argue that the alleged retaliatory acts "were actually a part of a continued dialogue" regarding Ms. Palmore's "performance issues."  Defs.' Br. at p. 14.  Respectfully, Defendants cannot seriously expect the Court to dismiss Ms. Palmore's FMLA retaliation claim based on the self-serving (and incorrect, as will be proven in discovery) assertion that the retaliation against her was for a legitimate rather than unlawful reason.

In actuality, and, as alleged, Ms. Palmore was terminated and subjected to a bogus lawsuit against her less than two weeks after she went on protected medical leave.  Ex. A ¶¶ 279, 281.  This was after she was harassed directly after she disclosed her medical condition.  Id. ¶ 247.  Thus, Ms. Palmore has sufficiently alleged retaliation in violation of the FMLA.  See Ben-Levy v. Bloomberg, L.P., 518 F. App'x 17, 19 (2d Cir. 2013) (temporal proximity was "enough to support a prima facie case" in an FMLA retaliation claim).  Accordingly, Defendants' motion to dismiss Ms. Palmore's FMLA claims (7th and 8th Causes of Action) should be denied.

G.      **Plaintiff Has Plausibly Alleged Claims Under New York's Anti-SLAPP Law**

1.      **Defendants' Blatant Violation of New York's Anti-SLAPP Law**

Under the 2020 Amendments to the New York Anti-SLAPP Law ("Anti-SLAPP"), "[a] defendant in an action involving public petition and participation, as defined in [§76-a], may maintain an action, claim, cross claim or counterclaim to recovery damages . . . from any person who commenced or continued such action."  Civ. R. Law §70-a.

To state an affirmative cause of action under the Anti-SLAPP law, Ms. Palmore need only allege facts from which this Court can plausibly infer that the Napoli State Court Action "is (a) based on a publicly made statement involving an issue of public interest; and (b) was commenced without a substantial basis in fact and law."  Max v. Lissner, No. 22 Civ. 5070 (VEC), 2023 WL 2346365, at *9 (S.D.N.Y. Mar. 3, 2023).  "Public interest" is defined "broadly" to mean "any subject other than a purely private matter."  Civ. R. Law § 76-a(1)(d).

Matters of "public concern" include "matter[s] of political, social, or other concern to the community," even those that do not "affect the general population."  Abbott v. Harris Publ'ns, Inc., No. 97 Civ. 7648 (JSM), 2000 WL 913953, at *7 (S.D.N.Y. July 7, 2000).  "In light of the extremely broad interpretation [of what qualifies as public interest] by New York courts," cases where "the subject matter was not a matter of legitimate public concern are extremely rare."  Lindberg v. Dow Jones & Co., Inc., No. 20 Civ. 8231 (LAK), 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021).

Ms. Palmore has plausibly alleged that Defendants filed the Napoli State Court Action against Ms. Palmore based on public statements having a public interest.  Ex. A ¶ 253-54.  The Napoli State Court Action is literally premised on allegedly defamatory public statements made by Ms. Palmore on Facebook regarding her discrimination claims—undoubtedly a public forum.  See Ex. B ¶¶ 170-79 (stating Ms. Palmore "defamed [Napoli] on social media [Facebook]"); see also

Coleman v. Grand, No. 18 Civ. 5663 (ENV) (RLM), 2021 WL 768167, at *13 (E.D.N.Y. Feb. 26, 2021) ("Facebook is a public forum within the meaning of New York's anti-SLAPP law.").  Thus, Defendants violation of the Anti-SLAPP law is more than sufficiently alleged.

Defendants argue that (1) Ms. Palmore's alleged statements were not made publicly; (2) her statements do not constitutes matters of public interest or concern and (3) that the Napoli State Court Action was brought against her without a substantial basis in law and fact.  For reasons already articulated, Defendants are wrong on the first two arguments particularly at the pleading stage.  Defendants are also wrong that Ms. Palmore's Anti-SLAPP claims are susceptible to dismissal because Defendants believe their pre-emptive claims against her have merit.  For reasons articulated above, see supra at pp. 4-5, 16-19.  Ms. Palmore has plausibly alleged that the claims not only do not have "substantial basis in law and fact," but are baseless claims rooted in vindictiveness, retaliation and unlawful animus.  Ex. A ¶¶ 251, 253-58, 260-78.

### 2.    The *Colorado River* Doctrine is Wholly Inapplicable Here

The Supreme Court has explained that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an *extraordinary and narrow exception* to the duty of a District Court to adjudicate a controversy properly before it." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976) (emphasis added).  Before a court evaluates the appropriateness of abstention, it must make a threshold determination that the federal and state court cases are "parallel."  Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir.1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River.").

"'Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'"  Abercrombie v. College, 438 F. Supp. 2d 243, 258

(S.D.N.Y. 2006); see also Abe v. N.Y. Univ., No. 14 Civ. 9323, 2016 WL 1275661, at *6 (S.D.N.Y.

Mar. 30, 2016) ("[P]arallelism is achieved where there is a substantial likelihood that the state

litigation will dispose of all claims presented in the federal case.").  Defendants' argument in favor

of abstention on Colorado River grounds fails at this threshold.

Defendants do not even argue that the Napoli State Court Action is parallel; rather, they

merely state that "perfect symmetry…is not required."  Defs' Br. at p. 21.  However, the Defendants

fail to point out *any* symmetry between this action and the Napoli State Court Action outside of the

fact that Ms. Palmore has asserted an affirmative Anti-SLAPP claim in this action, and has argued

for dismissal of the Napoli State Court Action under a provision of CPLR that incorporates aspects

of the Anti-SLAPP Law.[5]  It is well-settled that "abstention is clearly improper when a federal suit

alleges claims within the exclusive jurisdiction of the federal courts."  Andrea Theatres, Inc. v.

Theatre Confections, Inc., 787 F.2d 59, 62 (2d Cir. 1986).

The Napoli State Court Action includes claims for, *inter alia*: breach of contract, breach of

fiduciary duty of loyalty, aiding and abetting breach of fiduciary duty of loyalty, injurious

falsehood, unjust enrichment, declaratory judgment and constructive trust—none of the claims

asserted are federal claims.  See Ex. B.  There is no Anti-SLAPP claim or counterclaim.  Thus, the

claims are not parallel at all—one action has an Anti-SLAPP claim and one action does not.

Kingsway Fin. Servs. v. PricewaterhouseCoopers, LLP, 420 F. Supp. 2d 228, 236 (S.D.N.Y. 2005)

("Because the cases are not parallel, the Court does not have authority to abstain . . . and need not

balance the Colorado River factors.") (internal citations and quotation marks omitted).

In any event, to determine whether abstention under Colorado River is appropriate, a district

court is required to weigh six factors, "with the balance heavily weighted in favor of the exercise of

---

[5]     To be sure, Ms. Palmore moved to dismiss Napoli's retaliatory lawsuit on several grounds under CPLR 3211—
including under 3211(g) which incorporates an aspect of Anti-SLAPP—but has not asserted any affirmative Anti-SLAPP
claim of any kind.

jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 2 (1983).  These six factors include: "(1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." <u>De Cisneros v. Younger</u>, 871 F.2d 305 (2d Cir. 1989).  Even if the Court decides to balance these factors (it should not), the balance favors retention of jurisdiction.

First, Defendants concede that there is no res and federal court is not less convenient than state court for the parties.  Defs.' Br. at p. 21.  Second, as discussed above, this action and the Napoli State Court Action are nowhere near "parallel" and there is no risk of "piecemeal litigation" where the claims in the separate actions are inapposite.  Third, Defendants' assertion that the Napoli State Court Action has proceeded "beyond the early stage of litigation" is an outright lie—the Napoli State Court Action is at the exact same procedural posture as this action.[6]  Fourth, this action involves federal questions and Ms. Palmore's federal rights would be unprotected if this court were to abstain on <u>Colorado River</u> grounds.  In sum, there is simply no basis for this court to abstain from adjudicating this action.  Therefore, Defendants' motion to dismiss Ms. Palmore's Anti-SLAPP claim (9th Cause of Action) should be denied.

## III.   THE INDIVIDUAL DEFENDANTS ARE SUBJECT TO PERSONAL LIABILITY FOR THE ASSERTED CLAIMS

While Section 1981 imposes liability against individuals who are supervisors and actually participate in the alleged discriminatory conduct, the NYSHRL and the NYCHRL impose liability against defendants on three basis: they "(a) ha[ve] an ownership interest in the employer; or (b) ha[ve] the power to make, not just carry out, personnel decisions; or (c) actually participate[d] in the

---

[6]      Ms. Palmore has moved to dismiss the Napoli State Court Action and that motion is currently *sub judice*.  <u>See</u> Ex. C.

conduct giving rise to the discrimination claim." Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP, 332 F.Supp.2d 592 (S.D.N.Y. 2004); see also Feingold v. New York, 366 F.3d 138, 158 (2d Cir.2004) (standard under Section 1981).

Ms. Palmore alleges all of the above—that each of the Individual Defendants is a principal at Napoli (Ex. A ¶ 18-20) with the power to make personnel decisions (Id. ¶¶ 64-67, 73-75, 167, 279), and that each has actually participated in the unlawful conduct set forth in the Complaint. While Defendants argue that Ms. Palmore failed to allege culpable individual participation, that argument is belied by their own recitation of pages worth of allegations alleging individual participation by each of the Individual Defendants—but also by the allegations conveniently left out of their papers. For the sake of brevity, Ms. Palmore will address each of the Individual Defendants in turn.

Regarding Ms. Napoli, Ms. Palmore alleges that Ms. Napoli is a principal of Napoli (Ex. A ¶ 19), that her efforts to secure the marketing (of herself to communities of color) that Ms. Palmore was promised were repeatedly rebuffed (Id. ¶¶ 64-67, 73-75) and that Ms. Napoli acquiesced discriminatory conduct which was literally a basis for Ms. Palmore's complaint of discrimination (Id. ¶¶ 127-29, 137). As one of three equity partners, a reasonable inference can be made that Ms. Napoli was involved in Ms. Palmore's termination. Moreover, as an equity partner, she is by definition involved in the retaliatory Napoli State Court Action.

Regarding Mr. Shkolnik, Ms. Palmore alleges that Mr. Shkolnik is a principal of Napoli (Id. ¶ 20), that she spent multiple days filming commercials at Mr. Shkolnik's request, only to be replaced in that same commercial with Caucasian actors (Id. ¶¶ 101-102), that Mr. Shkolnik ignored Ms. Palmore's requests for marketing (Id. ¶¶ 65-67) and admonished Ms. Palmore for supposed unspecified problems with her work (Id. ¶ 164). Like Ms. Napoli, a reasonable inference can be

made that he was involved in Ms. Palmore's termination, and he is directly involved in the retaliatory Napoli State Court Action.

Regarding Mr. Napoli, Ms. Palmore alleges that Mr. Napoli is a principal at Napoli (Id. ¶ 18), referred to her as the "Black female Ben Crump" (Id. ¶ 90), repeatedly rebuffed and ignored her requests for marketing (Id. ¶¶ 51,65-67,73-75), told Ms. Palmore, the only person of color in the group, to just "be quiet and don't say anything" (Id. ¶ 99), repeatedly yelled at her, belittled her and harassed her (¶¶139, 148, 180-88, 241-42), told Ms. Palmore that her salary would be reduced (Id. ¶ 167), fired her (Id. ¶ 279) and sued her (Id. ¶ 251).

As set forth above, Ms. Palmore has adequately alleged participation by the Individual Defendants that give rise to her discrimination claim.  Moreover, Defendants' argument that because there was no principal violation under Section 1981, the NYSHRL or the NYCHRL is similarly unavailing.  See supra at §II(B)(1)-(4).  Accordingly, Defendants' motion to dismiss Causes of Action one through nine as to the Individual Defendants should be denied.

An individual may be held liable under the FMLA only if they are an "employer," which is defined as encompassing "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I).  To determine whether an individual-capacity defendant qualifies as an "employer," the Second Circuit applies the "economic reality" test.  Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 422 (2d Cir. 2016).  However, "[t]he economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings." Augustine v. AXA Fin., Inc., No. 07–CV–8362, 2008 WL 5025017, at *3 (S.D.N.Y. Nov. 24, 2008).

To survive a motion to dismiss, Ms. Palmore need not satisfy the economic reality test; instead, she must simply "plead that the proposed [I]ndividual [D]efendants had substantial control over the aspects of employment alleged to have been violated."  Id. at *4; see also Holt v. Welch

Allyn, Inc., 05 Civ. 1135 (RSP) (GJD), 1997 WL 210420, at *2 (N.D.N.Y. Apr. 15, 1997) (holding

that liability under the FMLA extends "to all those who controlled in whole or in part [the

plaintiffs'] ability to take [ ] leave[s] of absence and return to [their] position[s]").  The Individual

Defendants are all principals at Napoli and all exerted control over Ms. Palmore at all times—and

after she exercised her FMLA rights, she was fired and sued by them.[7]  Thus, Defendants' motion to

dismiss Ms. Palmore's FMLA claims (7th and 8th Causes of Action) as to the Individual

Defendants should be denied.

**IV.**     <u>**VENUE IS PROPER IN THIS DISTRICT**</u>

In adjudicating a Rule 12(b)(3) motion to dismiss, the court "must accept the facts alleged in

the complaint as true and construe all reasonable inferences in the plaintiff's favor."  <u>Cavu Releasing,</u>

<u>LLC. v. Fries</u>, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005).  Pursuant to 28 U.S.C § 1391(b)(2), a civil

action may be brought in "a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is

situated."

Defendants argue venue is improper because: (1) a substantial part of the events giving rise

to Ms. Palmore's claims occurred outside of this district; (2) Ms. Palmore resides on Long Island;

and (3) Ms. Palmore did not work at Napoli's NYC office.  Defs.' Br. at p. 8.  These arguments are

wrong.  Despite Defendants self-serving assertions, Ms. Palmore did work in Napoli's NYC office

and alleges that she worked from Napoli's NYC **and** Long Island offices.  Ex. A ¶ 16.  In fact, Ms.

Palmore regularly worked from Napoli's NYC office.  Pl.'s Decl. ¶ 1.  Moreover, the Task Force

meeting where discriminatory rhetoric was used by a Firm executive took place in NYC (Ex. A ¶¶

130, 134) and Plaintiff learned that the Firm acquiesced discriminatory conduct in NYC (which she

---

[7]     In fact, Ms. Palmore's employment agreement provides that she is "subject to the direction and control of the Law Firm."  <u>See</u> Ex. B. ¶ 47.

later complained about) (Ex. A ¶¶ 127-29).  Pl.'s Decl. ¶¶ 4-6.  Thus, the events that took place at Napoli's NYC office are substantial and highly relevant to this litigation, confirming the appropriateness of this venue.  Defendants do not cite a single case that supports the contention that the SDNY is an improper venue.

Defendants also make several aversions that the Eastern District of New York ("EDNY") is the proper venue for this action since they allege, in a conclusory fashion, that a substantial part of the events occurred in EDNY.  However, to defeat Defendants assertion that the venue is not proper in the SDNY, Ms. Palmore "does not have to prove that [her] chosen venue is the best forum for the action . . . [she] need only demonstrate that the choice is a permissible one."  Leucadia Nat. Corp. v. FPL Grp. Cap., Inc., No. 93 Civ. 2908 (LAP), 1993 WL 464691, at *6 (S.D.N.Y. Nov. 9, 1993); see also Schomann Int'l Corp. v. Northern Wireless, Ltd., 35 F. Supp. 2d 205, 212 (N.D.N.Y. 1999) ("[I]t is sufficient that a substantial part of the events occurred here, even if a greater part of the events occurred elsewhere").  As detailed above, there were several critical events that occurred while Ms. Palmore was working at Napoli's NYC office and SDNY is the proper venue for this action.

Defendants also seek to change the venue from the SDNY to the EDNY based on: (1) the convenience of the parties and (2) availability of evidence.  Defs.' Br. at p. 8 (citing 28 U.S.C. 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.")).  To this point, "deference is to be given to [the] plaintiff's choice of forum and transfer should be ordered only if the balance of conveniences *weighs strongly in favor* of the change of forum."  Calabrese v. Teoco Corp., 637 F. Supp. 2d 160, 163 (S.D.N.Y. 2009) (emphasis added).

Defendants are not inconvenienced by this matter being adjudicated in the SDNY and do not even claim to be inconvenienced in their moving papers.  Instead, Defendants actually assert that NYC is inconvenient for *Ms. Palmore*.  Ms. Palmore's convenience, however, is "irrelevant to the determination of defendant[s'] motion to transfer."  Levine v. Arabian Am. Oil Co., No. 84 Civ. 2396 (RLC), 1984 WL 1247, at *2 (S.D.N.Y. Nov. 16, 1984); see also Smith v. Ouimet, No. 16 Civ. 184 (JLC), 2016 WL 3020825, at *3 (S.D.N.Y. May 19, 2016) ("The Court will not force convenience" on a party that did not request transfer).

Ms. Palmore filed her action in the SDNY and her choice of forum is afforded deference and should not be disturbed.  Further, Defendants are not inconvenienced by this forum—Napoli is headquartered in the SDNY and the Individual Defendants allegedly live in Puerto Rico, making the EDNY no more convenient than the SDNY.  Regarding the availability of evidence, Defendants rely on conclusory assertions that "ease of access to sources of proof" and unidentified "relevant documents" warrants transfer of this matter to the EDNY.  However, it is well-settled that "the moving party must specifically show why transfer is justified; affidavits which are merely conclusory are insufficient to meet that burden."  Exec. Sec. Corp. v. Bertoli, No. 77 Civ. 714-CSH, 1977 WL 1016, at *1 (S.D.N.Y. May 18, 1977).  Defendants have failed to establish inconvenience or identify any evidence that would be inaccessible if this matter were adjudicated in the SDNY.  Thus, Ms. Palmore's choice of forum should be left undisturbed.

**V.     TO THE EXTENT THE COURT DEEMS IT NECESSARY, MS. PALMORE SHOULD BE GRANTED LEAVE TO AMEND**

To the extent the Court finds there to be any pleading deficiency capable of being cured, Ms. Palmore respectfully requests leave to file an Amended Complaint.  See FRCP 15(a)(2) ("The court should freely grant leave [to amend] when justice so requires.").

## CONCLUSION

Therefore, Plaintiff respectfully requests that Defendants' motion to dismiss be denied in its

entirety.

Dated: August 14, 2023                          Respectfully submitted,
      New York, New York

                                                 **WIGDOR LLP**

                                               By: _____

                                                  David E. Gottlieb
                                                  Kassandra Vazquez

                                             85 Fifth Avenue
                                             New York, NY 10003
                                             Telephone: (212) 257-6800
                                             Facsimile: (212) 257-6845
                                             dgottlieb@wigdorlaw.com
                                             kvazquez@wigdorlaw.com

                                             *Counsel for Plaintiff*